# Richmond

EDWIN L. REAVES v. COMMONWEALTH OF VIRGINIA.

June 18, 1951.

Record No. 3843.

Present, Hudgins, C. J., and Eggleston, Spratley, Buchanan, Miller and Whittle, JJ.

The opinion states the case.

*Harold B. Singleton, Lucian H. Shrader* and *James S. Easley,* for the plaintiff in error.

*J. Lindsay Almond, Jr., Attorey General,* and *Frederick T. Gray, Assistant Attorney General,* for the Commonwealth.

Spratley, J., delivered the opinion of the court.

Edwin L. Reaves, sometimes hereinafter referred to as the defendant, was indicted for buying and receiving an electric hammer and attachments thereto of the value of $75.00, knowing the same to have been stolen. Upon his plea of not guilty, he was convicted by a jury and his punishment fixed at one year in the penitentiary. To the judgment entered according to the verdict we allowed this writ.

At the outset of the trial below, the defendant orally moved the court to quash the indictment against him on the ground of former jeopardy. In support of his motion, he tells us, in his brief, that ten misdemeanor warrants had been issued charging him with the larceny of various small items of property under the value of $50.00 in each case; that two indictments had been returned against him for felonies, one involving various items of tools stolen from the Lynchburg High School, and the other the Stanley electric hammer described in this proceeding, the property of one, M. A. Cox; and that on the day preceding his trial in this case, he had been tried and convicted under the first-mentioned indictment and given a sentence of four years in the penitentiary. His motion was based upon the theory that the larcenies charged in the several prosecutions were a part of one continuous transaction, done in pursuance of a single impulse, and that a prosecution involving a part or section of the goods charged to have been stolen in that transaction covered the entire offense. *West* v. *Commonwealth,* 125 Va. 747, 754, 99 S. E. 654.

In Virginia the question of former jeopardy cannot properly be raised orally but must be made by special plea of former acquittal or conviction, setting forth all the facts and circumstances necessary to identify the offense and the accused. *DeBoer* v. *Commonwealth,* 147 Va. 671, 674, 137 S. E. 469 and *Driver* v. *Seay,* 183 Va. 273, 32 S. E. (2d) 87.

The record before us does not disclose the evidence and proceedings upon the trial of the indictment involving the tools of the Lynchburg High School, or upon the trials of the misdemeanor warrants.

In the absence of a special plea and in the condition of the record, there is nothing before us to enable us to determine the facts undertaken to be put in issue by the oral motion.

This leaves for our consideration only the sufficiency of the evidence to sustain the verdict of the jury and the propriety of the court's rulings upon the instructions.

The evidence on behalf of the Commonwealth shows a long course of dealings between the defendant, an experienced business man, thirty-two years of age, and two youths, Allen Taylor, sixteen years of age, and John Spruce, twelve years of age.

In 1949, Allen Taylor sold some tools, which he had used in building a racer for a soapbox derby, to the defendant. Subsequently, he and John Spruce began stealing various types of tools from automobiles and shops. Two or three times a week, over a period of more than six months, they carried the stolen goods to the defendant and received in return food, money, candy, drinks, or cigarettes. Almost invariably they went to his place of business, a restaurant, at night to sell and deliver the tools. If the tools were small they concealed them in their pockets and went to the front door of the restaurant; but if they were too large to be so concealed they would leave them at the basement door at the back of the restaurant building, call the defendant, who would then come, open the door, and let them bring the tools in. Sometimes they would put the tools in the defendant's car parked near his restaurant.

The electric hammer, in its box container, was brought to the basement door of the restaurant. Taylor went in the front door and notified Reaves of its arrival. The two of them went to the back door and the boxed hammer was delivered to Reaves and carried to the upstairs floor.

On one occasion Reaves told the boys that he had enough tools and wanted some toys. The boys then stole a tricycle and a red toy fire truck which they sold to the defendant. The fire truck was practically new. Reaves admitted that its purchase caused him some uneasiness, but he did not inquire of the boys' parents whether their sons had a right to sell it, although they lived within a short distance of his restaurant.

Several times Reaves loaned Taylor money on condition that the latter would bring him property in return. If Taylor did not carry out his promise, Reaves looked him up and inquired the reason for his failure. Taylor said that two or three times, he told the defendant that the goods which he delivered to him were stolen, and that while Reaves did not always know where the tools came from, sometimes he did. Spruce corroborated Taylor's testimony as to the sale and manner of delivery of the stolen goods. He said that he, alone and with Taylor, sold stolen merchandise to Reaves "a lot of times." He also said

that "a few times" when the defendant asked him where the things came from, he told him that they were stolen. Payment was always made in small amounts or in merchandise of much less value than the property delivered.

On June 19, 1949, W. H. Phlegar, a police officer of the city of Lynchburg, questioned Taylor about a theft of stolen goods. A search warrant disclosed stolen property in the basement of Taylor's home. Taylor admitted other thefts involving tools, said that he had sold them, and promised to return them. That afternoon Phlegar questioned Reaves about buying tools from Taylor and some other boys. Reaves told the officer, "I think I bought a couple of screw drivers and maybe a pair of plyers or two." Asked about metal tool boxes, he said, "Yes, I think I bought one of those from them, might be one or two. I am not sure." He was told to bring the tools to police headquarters. The next day he brought in a couple of boxes of tools, a lot of mechanics wrenches, end wrenches and screw drivers, and said "That is all," adding that probably some of the tools belonged to him. That afternoon the police went to Reaves' home, where they found a tricycle, a sidewalk bicycle, and in the attic a large number of tools, bucksaws, braces, bits, wrenches, vises and planes. There were a dozen pairs of plyers, three or four bucksaws, four or five pipe wrenches, a dozen screw drivers, braces, and two or three planes, two or three vises, wood chisels, and a new set of wood bits in a wooden box. Many of the tools were in new condition, especially the wrenches. After their visit to his house, the police again questioned Reaves about a Stanley electric hammer, which had been stolen by Taylor and Spruce, and on the next morning, July 21st, the defendant, Reaves, brought the Stanley electric hammer involved in this proceeding, the toy fire truck, the tricycle, both heretofore mentioned, and a few more tools to police headquarters, all of which he said he got from the two boys.

The defendant testified that he had worked with the Hot Shoppes, a large organization of restaurants in Washington, D. C., for about twelve years, and had risen from the lowest position to that of manager. In 1948, he left that job and purchased a farm near Lynchburg, where he lived with his family. In 1949, he purchased and began the operation of a restaurant in Lynchburg. He admitted receiving the tools, saying that he didn't pay what they were worth, but what he was asked for them.

He denied any knowledge, or circumstances putting him on notice, that the property was stolen. He paid Taylor $5.00 for the electric hammer, and said he purchased the tools looking forward to an opportunity to open a workshop of his own. He explained that he did not return all of the tools after the first questioning of the officers, because he didn't understand that those retained by him were stolen property, and thought the electric hammer had been found by the officers when they went to his home.

A number of the defendant's friends and business associates testified that his reputation for telling the truth was good.

R. W. Smith, Jr., for twenty-one years a hardware salesman, said he was familiar with the Stanley line of electric goods, and while his firm did not stock Stanley electric hammers, it sold them on special orders, and he was familiar with their price. He gave the price of a new hammer as $135.00. He examined the hammer in evidence and said it would be worth half-price, that is, $60.00 or $65.00, it being the custom of the hardware business to allow half-price for such an item.

Thomas W. Bryant, engaged in the electric business for five years, said that while he was not familiar with Stanley electric hammers, he knew the custom of the trade with regard to other electric tools, and that the general practice was to cut the original price in half for a second-hand tool in good shape. He examined the hammer in question, found it to be in first class condition, and fixed its value at $60.00.

Another witness, J. O. Burnett, who had been employed for five years in a repair shop, and had bought and sold electric hammers, said he thought the value of the one involved here was about $35.00, with an increase in price if its attachments were included. He fixed the price from its outside appearance because said he, "You can't tell what is on the inside."

The court gave six instructions at the request of the Commonwealth, A, B, C, D, E and F, and six for the defendant numbered 1, 2, 3, 4, 5 and 6.

Instruction A informed the jury as to the punishment for grand and petit larceny. Defendant objected to it on the ground that the evidence failed to show the value of the electric hammer was $50.00 or more. The above testimony disposes of that objection.

Instruction B, with slight changes to fit the facts, is identical with an instruction approved in *Gilland* v. *Commonwealth,* 184

Va. 223, 233, 35 S. E. (2d) 130. It correctly sets out the requirement of proof in this type of case. *Price* v. *Commonwealth,* 21 Gratt. (62 Va.) 846; *Stapleton* v. *Commonwealth,* 140 Va. 475, 124 S. E. 237. It reads as follows:

"The Court instructs the jury that while under the law to sustain the charge of recieving the electric hammer and accessories knowing the same to have been stolen it is necessary for the Commonwealth to establish beyond a reasonable doubt that the electric hammer and accessories were previously stolen by some person other than the accused; that the accused received the said electric hammer and accessories from such other person; that at the time he received them he knew they had been stolen; and that he received them with dishonest intent; yet, if you believe from the evidence beyond a reasonable doubt that the accused was recently before his arrest in exclusive possession of the electric hammer and accessories mentioned in the evidence then such possession of itself affords sufficient grounds for the presumption of the fact that the accused received the said electric hammer and accessories knowing it to have been stolen and received it with dishonest intent, and in order to repel the presumption makes it incumbent on him, on being called for the purpose, to account for such possession consistent with his innocence. If he gives a reasonable account of it, then it devolves on the Commonwealth to prove that such account is untrue. If he gives an unreasonable account of it, then it devolves on the prisoner to sustain such account by other evidence.

"You are further instructed that the circumstances under which the prisoner is found in possession of such electric hammer and accessories, the time and place, the conduct of the accused, and his account of his possession are all matters for the consideration of the jury."

Instructions C and E, granted without objection, related to the consideration to be given circumstantial evidence. They stated the law of the case in the following language:

"C. If the jury believe from the evidence beyond a reasonable doubt that the electric hammer and its accessories were stolen property and that they came into the possession of the defendant, Edwin L. Reaves, in the City of Lynchburg, under such circumstances that the defendant knew that they were stolen property, and that he took possession of them intending

to convert them to his own use, then the jury should find the defendant guilty.''

''E. The Court instructs the jury that in determining whether the defendant knew that the electric hammer and accessories were stolen property at the time he bought or received same, the jury may, if warranted by the evidence, infer that he had such knowledge from all the circumstances known to the accused prior to and at the time of receiving the property.''

Instructions 1, 2 and 3, as offered by the defendant, read as follows:

''1. The Court instructs the jury that they cannot charge the defendant with knowledge that the goods involved in this case were stolen from the fact that he did not exercise ordinary care or that degree of care a man of ordinary prudence would, under the circumstances, have exercised. *Actual* knowledge of the larceny must be brought home to the defendant.''

''2. The Court instructs the jury that you are not to convict the defendant of notice that the goods were stolen from the mere fact that he obtained them at less than their true value, but to charge the defendant with guilty knowledge he must have had *actual* knowledge at the time he came into possession of the goods, and the burden of proving such *actual* knowledge is on the Commonwealth, and it must show you beyond a reasonable doubt that the defendant had such *actual* knowledge at the time that he came into possession of the goods.''

''3. The Court instructs the jury that the question to be determined by them in this case is whether the defendant had *actual* knowledge that the goods involved in this case which he purchased were stolen and the burden is upon the Commonwealth to prove this fact beyond reasonable doubt, and the Court tells the jury that if after considering all of the evidence they entertain a reasonable doubt as to whether the defendant did *actually* know the goods he purchased were stolen then they must find the defendant not guilty.'' (Italics added.)

Over the objection of the defendant, these instructions were amended by striking out the words ''actual'' and ''actually,'' as indicated by the italics.

The remaining instructions related to the burden of proof and the consideration to be given evidence of good character and the testimony of accomplices.

■ Defendant argues that section 18-169 of Virginia Code, 1950\*, requires proof of actual knowledge to justify a conviction, and that any other construction would authorize a conviction if the jury was satisfied that the circumstances were sufficient to impute knowledge to a man of reasonable prudence, and thus permit a conviction of an accused because he was not a man of reasonable prudence in the opinion of the jury. In effect, his contention is that a conviction cannot be based on circumstantial evidence. We find no merit in this contention.

Instruction number 1 clearly told the jury that failure to exercise ordinary care and reasonable prudence could not be made the basis of conviction but that ''Knowledge of the larceny must be brought home to the defendant.'' Our statute does not contain the words *actual knowledge*.

The great weight of authority is to the effect that guilty knowledge need not be directly proved. It may be shown by circumstances. It is sufficiently shown if the circumstances proven are such as must have made or caused the recipient of stolen goods to believe they were stolen. 45 Am. Jur., Receiving Stolen Property, sections 18 and 19, pages 403, *et seq.;* 52 C. J. S., Larceny, section 105, page 924; 17 R. C. L., Larceny, section 92, page 85; Clarke's Criminal Law, 3rd Ed., section 109, pages 381, 382; Bishop on Criminal Law, 9th Ed., section 1138; Wharton's Criminal Law, 12th Ed., sections 1231 and 1232.

In *Longman* v. *Commonwealth,* 167 Va. 461, 188 S. E. 144, we said:

''While guilty knowledge is an essential element of the crime of receiving stolen goods, it may be shown by circumstances.''

■ In *Stapleton* v. *Commonwealth, supra,* citing and approving previous decisions, we held that the recent possession of stolen goods is evidence against the possessor tending to show a guilty receiving by him.

■ The necessity for the Commonwealth to prove that the defendant had actual knowledge of the larceny in the sense that he was present as a witness thereof would place upon it an undue and impossible burden in many cases embraced within the provisions of our statutes. It might give a juror an impression that a conviction could not be based on circumstantial evidence, or

---

\* ''If any person buy or receive from another person, or aid in concealing, any stolen goods or other thing, knowing the same to have been stolen, he shall be deemed guilty of larceny thereof, \* \* \*.''

that it must be shown that the accused actually witnessed the theft. It is true that instructions requiring actual knowledge were given on behalf of the defendant in *Stapleton* v. *Commonwealth, supra.* However, in that case the conviction of the defendant was sustained, and our action in affirming his conviction in no wise indicated an approval of instructions given in his favor. It was not necessary to take them into consideration.

Upon a careful consideration of the evidence and the law, we see no reason for disturbing the verdict for insufficiency of proof, or error of law. The article described in the indictment admittedly had been stolen. There was no question but that Reaves received it directly from the boys who stole it. He paid but $5.00 for it when it was worth more than ten times that much according to the Commonwealth's evidence. His own testimony concerning the circumstances under which he dealt with the two youths made it plain that he suspected that they had stolen the property which he was buying from them. He bought a large number of tools from two young boys, without visible means of a livelihood. He arranged for receipt of them under circumstances of stealth calculated to avoid attention. He was found in the recent and exclusive possesion of the stolen property. His lack of frankness in dealing with the police in the return of the tools indicated his comprehension of unlawful dealings with the boys, and makes it difficult to believe that he thought he was engaged in honest and honorable transactions. Evidence of his good reputation for truth and honesty only showed what his friends and neighbors thought of his character. His real character was shown by his acts and deeds. All of the facts and circumstances irresistibly point towards his guilty knowledge.

The judgment of the trial court is affirmed.

*Affirmed.*