KENNETH WAYNE SPEIGHT

v.

COMMONWEALTH OF VIRGINIA

No. 0104-85

Decided April 1, 1986

■■■■■■■■■■■■■■■■
■■■■■

■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■

---

COUNSEL

Michael HuYoung, for appellant.

Eugene Murphy, Assistant Attorney General (Gerald L. Baliles, Attorney General, on brief), for appellee.

---

OPINION

**BENTON, J.**—Kenneth Wayne Speight appeals convictions of both grand larceny and distribution of heroin, a Schedule I controlled substance. The issues are limited to: (1) whether the evidence was sufficient to support the grand larceny conviction; and (2) whether the evidence was sufficient to prove that the substance analyzed to be heroin was purchased from Speight.

We reverse the grand larceny conviction and affirm the distribution of heroin conviction.

I.

On October 12, 1983, a stereo component system, a .44 magnum handgun, and other items were stolen from a residence on West Grace Street in the City of Richmond. Sergeant William N. Spaulding of the Henrico County Police Department testified that he had "a chance to see the defendant" on several occasions while Spaulding was working undercover on a "sting" operation in Richmond. On one of those occasions, October 13, 1983, Spaulding met Speight and drove him to a location on West Grace Street. Speight went into 1844 West Grace Street, came out, and told Spaulding to follow him inside. They met George Saunders on the second floor and followed him through a front apartment. A female and another male were present in the apartment.

Saunders directed Spaulding to a kitchen table which held various pieces of stereo equipment—a turntable, amplifier, receiver,

tuner, cassette deck and synthesizer. In the presence of Speight, Spaulding "agreed to make a deal with George [Saunders]" to purchase the six items for $450. Spaulding also agreed at that time to purchase from Saunders on the following day for $140 a .44 magnum handgun which was not in the apartment. Spaulding, Saunders, Speight, an unidentified male, and Spaulding's partner (Investigator Trimble) carried the stereo equipment to Spaulding's car.[1]

Spaulding paid Saunders $443 for the stereo equipment and promised to pay the remaining seven dollars when he purchased the gun on the following day. According to Spaulding, "Speight asked George [Saunders] how much money he was going to give him and George [Saunders] replied $25.00." Saunders handed two bills of unknown denomination to Speight. Spaulding then drove Speight to a White Tower Restaurant and arranged to meet Speight there the next day.

Spaulding and Speight met the next day as arranged. Shortly thereafter, Saunders arrived at the same location and discharged a passenger, who rode in Spaulding's automobile with Spaulding and Speight to 1844 West Grace Street. Before Saunders entered the building, Spaulding paid him the seven dollars that was owed on their prior transaction. Spaulding remained in the automobile with Speight and "paid Kenny [Speight] $20.00 for the introduction on the 13th to set up the deal to buy the stereo equipment."

Saunders then returned to Spaulding's vehicle carrying a Sanyo mini-stereo component set and a .44 magnum handgun wrapped in a white shirt. Although Spaulding "didn't know he was going to bring that stereo set with him at the time," Spaulding purchased the Sanyo set, which he identified as "the radio," for $75, and paid Saunders $125 for the gun. Spaulding then drove Speight to Cary Street and "paid Kenny [Speight] ten more for helping us on the deal with the gun and the radio."

Indicted for grand larceny under Code § 18.2-95, Speight was tried and found guilty by the court. The court found him not guilty of a charge of common law burglary.

---

[1] The record does not disclose or account for the presence of Investigator Trimble except when he helped transport the stereo equipment.

■ Speight contends that the evidence was insufficient to convict him of grand larceny because the evidence did not establish that he was in exclusive possession of the stolen property. *See Best v. Commonwealth*, 222 Va. 387, 282 S.E.2d 16 (1981); *Drinkard v. Commonwealth*, 163 Va. 1074, 178 S.E. 25 (1935). The Commonwealth, however, does not rely on the presumption of larceny which arises from an accused's recent, exclusive possession of stolen property. Instead, noting that larceny is considered a continuing offense, the Commonwealth's position is that "anyone who knows that personal property is stolen and assists in its transportation or disposition is guilty of larceny." *Moehring v. Commonwealth*, 223 Va. 564, 568, 290 S.E.2d 891, 892 (1982).[2] The Commonwealth argues that guilty knowledge can be inferred from the evidence in this case because Speight introduced Spaulding to Saunders within twenty-four hours after the theft, because Speight helped carry the equipment to the car, because Speight received money, and because Spaulding purchased the property for substantially less than the true value of the goods.

■ We believe that the evidence in this record does not support an inference or conclusion that Speight knew that the property was stolen. Notwithstanding Speight's explanation for the initial transaction between Spaulding and Saunders,[3] which the trier of fact need not have believed, an inference of guilty knowledge based upon the meetings between Spaulding and Speight or Spaulding and Saunders is untenable. Spaulding's testimony is inconclusive. Spaulding said only that he "met" Speight on October

---

[2] In response to Speight's motion for a bill of particulars, the Commonwealth stated:

2) On October 13, 1983, the defendant and others sold stolen property to the undercover Henrico Police officers. This property was stolen from Ralph Bryant, 1635 West Grace Street on October 12-13, 1983. The property was composed of stereo equipment purchased by the Undercover officers for $443.00.

3) On October 14, 1983, the defendant sold a .44 Magnum handgun to the Undercover officers for $125.00 taken from the same victim as beforementioned in paragraph number two. Also sold at this meeting was a Sanyo mini-stereo also belonging to Ralph Bryant; the officers paid $75.00 for this item.

[3] Speight's unrebutted testimony is that he was drinking beer with Spaulding, whom he knew as Wolf, in the parking lot of the White Tower Restaurant on October 13, when Saunders approached Spaulding and him with an offer to sell stereo equipment. Speight testified that he was acquainted with Saunders but declined the offer because he had no money. According to Speight, "George Saunders told him at the White Tower parking lot he wanted to sell [Spaulding] some equipment and [Spaulding] told him that he wanted to see the equipment first." Saunders told them to drive over to 1844 West Grace Street, and Saunders left on foot.

13 and drove him to the West Grace Street apartment. He offered no account of his meeting with Speight or their reason for going to that particular address. Spaulding may have known that the stereo equipment was being offered for sale and asked Speight to accompany him in order to provide an introduction to Saunders. The Commonwealth's evidence does not disclose when Speight first communicated to Spaulding, if in fact he ever did, that Saunders had property to sell; moreover, the Commonwealth's evidence in the form of Spaulding's testimony, fails to disclose any facts or circumstances concerning Spaulding's approach to Speight or Speight's approach to Spaulding that culminated in the transaction to purchase the property. The absence of proof provides only the opportunity for speculation.

> Where facts are established which are susceptible of two interpretations, one of which is consistent with the innocence of the accused, the jury or the judge trying the case cannot arbitrarily adopt the interpretation which incriminates him. The interpretation more favorable to the accused should be adopted unless it is untenable under all the facts and circumstances of the case.

*Williams* v. *Commonwealth,* 193 Va. 764, 772, 71 S.E.2d 73, 77 (1952) (citations omitted); *see also Smith* v. *Commonwealth,* 185 Va. 800, 821, 40 S.E.2d 273, 282 (1946).

An inference of guilty knowledge also cannot arise simply because Speight entered the building prior to Spaulding. Spaulding's testimony sheds no light on this occurrence. One can only speculate whether Spaulding was parking the automobile or whether there were other circumstances that were not disclosed by the Commonwealth's evidence that would have explained Speight's conduct.

Speight's assistance with four other persons in carrying the stereo equipment to Spaulding's car is relevant to disposition or transportation of the property but, under these circumstances, not probative of knowledge that the property was stolen.

The trier of fact could have disbelieved Speight's testimony that he received no money from Saunders; however, the possibility that Speight lied about not receiving the money does not constitute evi-

dence sufficient to support a finding of guilt beyond a reasonable doubt. *See Hyde* v. *Commonwealth,* 217 Va. 950, 954-955, 234 S.E.2d 74, 77-78 (1977); *see also Bishop* v. *Commonwealth,* 227 Va. 164, 169-70, 313 S.E.2d 390, 393 (1984); *Stover* v. *Commonwealth,* 222 Va. 618, 624, 283 S.E.2d 194, 196-197 (1981). Saunder's payment of two bills of unknown denomination to Speight after offering him $25, is suspicious but insufficient, standing alone or combined with the circumstances proved in this record, to show guilty knowledge beyond a reasonable doubt. The payment is also consistent with payment for leading Spaulding to the apartment or assisting with carrying the equipment to the car. Furthermore, there is no evidence that Speight possessed or was aware of the existence of the handgun or the Sanyo radio. Spaulding negotiated directly with Saunders for the purchase of the handgun which was not in the apartment and which was delivered to him by Saunders the next day. When Saunders delivered the handgun to Spaulding, he also brought along the Sanyo radio which Spaulding did not expect. Although Spaulding paid Speight $20 for the introduction to Saunders, no evidence links Speight to either the handgun or the Sanyo radio.

Finally, the Commonwealth cites *Reaves* v. *Commonwealth,* 192 Va. 443, 65 S.E.2d 559 (1951), to support its contention that the disparity between the value of the property and the price Spaulding paid for the items is probative of Speight's knowledge that the items were stolen. In *Reaves,* the accused, an experienced businessman, paid two youths, aged 16 and 12, $5 for an electric hammer valued at $60 to $135. The evidence here shows that Speight neither purchased nor sold the equipment. Spaulding negotiated directly with Saunders for the purchase. Unlike *Reaves,* where an experienced businessman received goods from youths, who had no visible means of a livelihood, in return for food, candy, drinks, or small sums of money, the facts of this case do not support the inference that Speight knew or should have known that Spaulding was paying less than the value of the items that were purchased.

The owner testified that in his opinion the approximate value of the stereo equipment was $5,000. The evidence does not show that payments of $450 for a used stereo component set, $75 for a Sanyo radio, and $140 for a handgun are suspiciously low. The stereo component set included a Girard turntable which was pur-

chased in 1968, fifteen years prior to the theft, and an SE equalizer which was a discontinued model and which was purchased by the owner from another person through a newspaper advertisement. The record does not otherwise disclose the age, condition, or purchase price of the stereo equipment. Even if the actual value was $5,000, a person not apprised of this value would not necessarily recognize that the price paid for the property was significantly less than the present value of the property.

Furthermore, the facts do not provide any additional basis for concluding that Speight had guilty knowledge. The sale of a used stereo component set at a private residence is not a circumstance which is illegal or inherently suspicious. *Cf. Reaves,* 192 Va. at 447, 65 S.E.2d at 561 (tools stolen from automobiles and shops being sold at the basement door and the back of a restaurant building at night).

As we view the evidence in the light most favorable to the Commonwealth, the most that the trier of fact could have reasonably concluded was that Speight led Spaulding to a private residence where either Spaulding or Speight knew that a stereo component set was being offered for sale. We find no evidence which would support an inference or conclusion that Speight knew that the stereo equipment was stolen or knew that Saunders had the handgun or the Sanyo radio.

■ We conclude, therefore, that the circumstances proved, while suspicious, do not prove beyond a reasonable doubt that Speight is guilty of grand larceny. "[S]uspicion is never enough to sustain a conviction." *Simmons* v. *Commonwealth,* 208 Va. 778, 783, 160 S.E.2d 569, 573 (1968).

## II.

The evidence also shows that Spaulding purchased a white powder substance in a package from Speight at approximately 3:15 p.m. on November 20, 1983, in a hallway on West Main Street. Spaulding gave the package to Detective Atkinson and police officer Shaw. Atkinson and Shaw sealed the package in an evidence envelope, wrote information on the evidence envelope, and delivered the envelope to Paul Strother, a forensic chemist at the Consolidated Laboratory Services. The following information is written on the evidence envelope:

Defendant: *#1 EXHIBIT #1*
Charge: *DISTRIBUTION OF SCH. I SUBSTANCE: HEROIN*
Officer Making Purchase or Recovery: *WWS*
Place: *W. MAIN STREET & VINE STREET*
Date: *11/20/83*
Time: *1522 Hrs.*
Description Of Contents: *ONE(1) CLEAR SEALED PIECE OF PLASTIC CONTAINING A WHITE POWDER SUBSTANCE*
Signature Of Persons Sealing Envelope Or Package: *J.W. ATKINSON #0103 S.B. SHAW #0099*

Strother testified that he received from Atkinson and Shaw the evidence envelope containing a white powder material, which was found by analysis to be heroin. The certificate of analysis shows the substance to be heroin.

Speight's contention that the evidence does not link the heroin to him because the certificate does not bear his name is without merit. The testimony is clear that the substance purchased from Speight was the substance placed in the evidence envelope and analyzed by the forensic chemist; moreover, the testimony establishes the chain of custody.

For these reasons, the conviction of grand larceny is reversed and dismissed, and the conviction of distribution of heroin is affirmed.

*Affirmed in part and reversed in part.*

Barrow, J., concurred.

Keenan, J., concurring in part, dissenting in part.

For the reasons stated by the majority in its opinion, I agree that Speight's conviction for distribution of heroin should be affirmed. However, I believe that the evidence before the trial court was sufficient to convict Speight of grand larceny. For this reason, I dissent from that portion of the majority opinion which reverses the conviction for grand larceny.

On appeal, the evidence must be reviewed in accordance with the standard set forth in *Higginbotham* v. *Commonwealth,* 216

Va. 349, 218 S.E.2d 534 (1975):

> Where the sufficiency of the evidence is challenged after con-
> viction, it is our duty to consider it in the light most
> favorable to the Commonwealth and give it all reasonable
> inferences fairly deducible therefrom. We should affirm the
> judgment unless it appears from the evidence that the judg-
> ment is plainly wrong or without evidence to support it.

*Id.* at 352, 218 S.E.2d at 537 (citations omitted).

The trial court received testimony describing Speight as the in-
dividual who organized the transaction and assisted in its culmina-
tion. Detective Spaulding stated that he paid Speight $20 "for the
introduction on the 13th to set up the deal to buy the stereo equip-
ment." Spaulding further testified that at the time of the transac-
tion in Saunders' apartment, Speight asked Saunders how much
money he was going to give him. Following this question, Spauld-
ing observed Saunders hand Speight two bills of unknown denomi-
nation. Spaulding also stated that Speight was present when he
and Saunders agreed on the terms of the sale.

Speight gave a wholly different account of his role in the trans-
action. He said that Spaulding, who was driving his own car over
to Saunders' apartment, paid him the money "for riding me over
to 1844 West Grace Street." In essence, this was tantamount to
saying that he was paid merely for keeping Spaulding company on
the ride over to Saunders' apartment. In further contrast to
Spaulding's testimony, Speight denied that he had received any
money from Saunders. Speight also stated that after Saunders
showed them the equipment, Spaulding and Saunders went into
the hall and later returned to the room where Speight was wait-
ing. Speight stated that, at that time, Spaulding told him that he
and Saunders had "consummated the deal."

Presented with material conflicts in the evidence, the trial court
was entitled to believe Spaulding and disbelieve Speight. Further,
it was entitled to conclude that Speight gave inherently incredible
testimony concerning why Spaulding had given him money. Based
on Spaulding's testimony, the court was entitled to find that
Speight had lied in denying that he had organized and actively
participated in the transaction. Further, the court was entitled to
find that Speight had lied when he denied that Saunders had paid

him for helping in the sale of the property. In receiving this testimony, the trial court was able to observe the witness' demeanor and evaluate their credibility. If the court found that Speight's testimony was incredible, it was entitled to infer that he was lying to conceal his guilt. *See Carter* v. *Commonwealth,* 223 Va. 528, 532, 290 S.E.2d 865, 867 (1982).

An additional circumstance presented for the court's consideration was the fact that Speight did not take Spaulding directly up to Saunders' apartment, but went up alone first. When Speight went up to Saunders' apartment, Spaulding remained in the car that was parked in front of 1847 West Grace Street. The trial court was entitled to find this circumstance suspicious in light of Speight's denial that he had any role in the transaction. His act of going up alone first to Saunders' apartment was inconsistent with this denial, and was circumstantial evidence bearing on the issue of his knowledge whether the property was stolen.

A further circumstance bearing on the issue of Speight's guilty knowledge was the fact that he returned with Detective Spaulding to meet Saunders the next day. On this occasion, Spaulding purchased the .44 magnum handgun and the mini-stereo set. Spaulding testified that he paid Speight $10 for "helping on the deal with the gun and the radio." From this circumstance, the court was entitled to question why, if Speight had been a passive non-participant in the October 13, 1983, transaction as he alleged, he had again accompanied Spaulding the next day. The court was entitled to consider this circumstance as further evidence that Speight was untruthful about his role in the October 13, 1983 sale, and that he did in fact organize the transaction on that date.

The trial court, therefore, received both direct and circumstantial evidence that Speight organized the disposition of the stolen property, as well as evidence that he was untruthful in his account of his participation. The trial court was entitled to infer guilty knowledge on the part of Speight upon finding his testimony untruthful about material facts and upon consideration of his conduct prior to, and during the sale of, the stolen property. Finding that he knew the property was stolen, there was sufficient evidence for the court to convict Speight of grand larceny. As stated in *Moehring* v. *Commonwealth,* 223 Va. 564, 568, 290 S.E.2d 891, 892 (1982), "anyone who knows that personal property is stolen and assists in its transportation or disposition is guilty of larceny."

Reviewing the evidence in its totality, I believe the trial court was entitled to conclude that Speight knew that the property was stolen, actively participated in its disposition, and lied about his actual role in the transaction in order to mask this fact. For this reason, I would affirm the conviction for grand larceny.