COURT OF APPEALS OF VIRGINIA

Present: Judges Kelsey, Haley and Powell
Argued at Alexandria, Virginia


MYCHAEL JAMAL PALMER

v.     Record No. 2671-08-4

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION* BY
JUDGE D. ARTHUR KELSEY
DECEMBER 1, 2009


FROM THE CIRCUIT COURT OF STAFFORD COUNTY
Gordon F. Willis, Judge

Dorian Dalton, Assistant Public Defender (Office of the Public
Defender, on brief), for appellant.

Eugene Murphy, Senior Assistant Attorney General (William C.
Mims, Attorney General, on brief), for appellee.


A jury convicted Mychael Jamal Palmer of felony receipt of stolen property, a violation

of Code § 18.2-108. On appeal, Palmer challenges the sufficiency of the evidence supporting his

conviction. We affirm, finding the evidence sufficient to prove he knowingly received stolen

property and concluding Palmer waived any challenge to the value of the stolen property.

I.

On appeal, we review the evidence in the "light most favorable" to the Commonwealth.

Commonwealth v. Hudson, 265 Va. 505, 514, 578 S.E.2d 781, 786 (2003). Viewing the record

through this evidentiary prism requires us to "discard the evidence of the accused in conflict with

that of the Commonwealth, and regard as true all the credible evidence favorable to the

Commonwealth and all fair inferences to be drawn therefrom." Parks v. Commonwealth, 221

Va. 492, 498, 270 S.E.2d 755, 759 (1980) (emphasis and citation omitted). Our examination of

--------

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

the record, moreover, "is not limited to the evidence mentioned by a party in trial argument or by the trial court in its ruling." Bolden v. Commonwealth, 275 Va. 144, 147, 654 S.E.2d 584, 586 (2008), aff'g, 49 Va. App. 285, 640 S.E.2d 526 (2007).

The evidence at trial proved that various items were stolen from the apartment of Matthew Smith and James Cheney sometime shortly after November 5, 2008. The stolen property included fifty PlayStation video games, several game controllers, and various weapons owned by Smith, as well as an X-Box game console, an outfit, and a watch owned by Cheney. On November 8, 2008, two "guys came in" to a Game Stop store "with a crateful of games" for sale.[1] Palmer was one of the two, and John Richardson was the other. The fifty games had been originally purchased new for $39 to $49 each. All fifty, however, were sold to Game Stop for $120.80. Richardson signed off on the receipt while Palmer stood nearby.

After notifying the authorities, Smith went to the same Game Stop location in search of the stolen items. With a list provided by Smith, the Game Stop manager matched the sales transaction receipt to the stolen property. Every game on Smith's list was identified on the Game Stop receipt. Deputies later executed a search warrant on Palmer's residence and found a watch that was later claimed by, and returned by the deputies to, the victim of the theft.

At his jury trial, Palmer faced several charges including felony receipt of stolen property. At the close of the Commonwealth's evidence, Palmer moved to strike the evidence on the ground that he did not knowingly receive stolen property with dishonest intent. Counsel argued:

> With respect to the receipt of stolen property, the Commonwealth
> must prove that the property that was previously stolen was
> received by the defendant and, Your Honor, the main elements, I

---

[1] This evidence comes from the oral report by the assistant manager to the manager. At trial, however, Palmer did not object to this hearsay testimony. When "admitted without objection," hearsay may "properly be considered" and "given its natural probative effect." Baughan v. Commonwealth, 206 Va. 28, 31, 141 S.E.2d 750, 754 (1965); Stevens v. Mirakian, 177 Va. 123, 131, 12 S.E.2d 780, 784 (1941).

think, that are in question here is whether or not that the defendant received the property with dishonest intent. But, more importantly, whether or not he knew that they had been stolen. There's no evidence that the defendant knew that the items had been stolen by Josh Mason or John Richardson or whoever possible could have committed that crime.

After the trial court denied Palmer's motion to strike, Palmer took the stand in his own defense. He testified that Richardson traded in the games and that he, Palmer, had nothing to do with it. Palmer denied knowing that the games had been stolen. Palmer admitted, however, that they initially entered the Game Stop with the video game discs without their plastic cases. When the store clerk refused to buy them in that condition, they both left the store and returned moments later with plastic cases for each of the fifty video games.

Palmer also claimed that later that day or the next his friend "Berto" sold him the watch for $10. The prosecutor asked Palmer: "And it's just a coincidence that the games were stolen from the same person as the watch that you had in your house?" "Yes," Palmer replied. He then insisted that he did not know where Richardson had obtained the video games. "I didn't have them," Palmer explained, "so I wasn't worried about what he was doing with hisself [sic] because he putting hisself [sic] in trouble. I'm not – I'm not signing for nothing because I'm not doing it."

Palmer called no other witnesses. In its rebuttal case, the Commonwealth called the detective who interviewed Palmer after the stolen watch was discovered in his bedroom. During the investigative interview, Palmer claimed his acquaintance, Robert Terrel, *gave* him the watch after he admired it on Terrel's arm.

At the close of all the evidence, Palmer renewed without comment his earlier motion to strike. The trial court denied the motion and submitted the case to the jury, which found him guilty of felony receipt of stolen property.

II.

On appeal, Palmer claims the evidence was insufficient to prove he knowingly possessed stolen property or that the video games had a value exceeding $200.

### A. APPELLATE STANDARD OF REVIEW

An appellate court does not "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." Williams v. Commonwealth, 278 Va. 190, 194, 677 S.E.2d 280, 282 (2009) (quoting Jackson v. Virginia, 443 U.S. 307, 318-19 (1979)) (emphasis in original).[2] "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Id. (citation omitted and emphasis in original). Thus, when a jury has rendered its verdict, "it is not for this court to say that the evidence does or does not establish his guilt beyond a reasonable doubt because as an original proposition it might have reached a different conclusion." Cobb v. Commonwealth, 152 Va. 941, 953, 146 S.E. 270, 274 (1929). Suffice it to say, an "appellate court is no substitute for a jury." Id.

Consequently, we are "not permitted to reweigh the evidence," Nusbaum v. Berlin, 273 Va. 385, 408, 641 S.E.2d 494, 507 (2007), because appellate courts have no authority "to preside *de novo* over a second trial," Haskins v. Commonwealth, 44 Va. App. 1, 11, 602 S.E.2d 402, 407 (2004). Instead, we give "juries the wide discretion to which a living record, as distinguished from a printed record, logically entitles them. The living record contains many guideposts to the truth which are not in the printed record; not having seen them ourselves, we should give great weight to the conclusions of those who have seen and heard them." Bradley v. Commonwealth,

---

[2] See also McMillan v. Commonwealth, 277 Va. 11, 19, 671 S.E.2d 396, 399 (2009); Jones v. Commonwealth, 277 Va. 171, 182, 670 S.E.2d 727, 734 (2009); Maxwell v. Commonwealth, 275 Va. 437, 442, 657 S.E.2d 499, 502 (2008).

196 Va. 1126, 1136, 86 S.E.2d 828, 834 (1955); James v. Commonwealth, 53 Va. App. 671, 677, 674 S.E.2d 571, 574 (2009).

Equally important, our sufficiency review "is not limited to the evidence mentioned by a party in trial argument or by the trial court in its ruling. In determining whether there is evidence to sustain a conviction, an appellate court must consider *all the evidence* admitted at trial that is contained in the record." Bolden, 275 Va. at 147, 654 S.E.2d at 586 (emphasis added). This deferential standard of review "applies not only to the historical facts themselves, but the inferences from those facts as well." Crowder v. Commonwealth, 41 Va. App. 658, 663 n.2, 588 S.E.2d 384, 387 n.2 (2003). Thus, a factfinder may "draw reasonable inferences from basic facts to ultimate facts," Haskins, 44 Va. App. at 10, 602 S.E.2d at 406 (citations omitted), unless doing so would push "into the realm of *non sequitur*," Thomas v. Commonwealth, 48 Va. App. 605, 608, 633 S.E.2d 229, 231 (2006) (citation omitted).

When considering circumstantial evidence, a factfinder cannot *arbitrarily* disregard a reasonable hypothesis of innocence. Even so, "the reasonable-hypothesis principle is not a discrete rule unto itself." James, 53 Va. App. at 681, 674 S.E.2d at 576 (quoting Haskins, 44 Va. App. at 8, 602 S.E.2d at 405). "Whether the hypothesis of innocence is reasonable is itself a 'question of fact,' subject to deferential appellate review." Clanton v. Commonwealth, 53 Va. App. 561, 572-73, 673 S.E.2d 904, 910 (2009) (*en banc*) (citation omitted). "Merely because defendant's theory of the case differs from that taken by the Commonwealth does not mean that every reasonable hypothesis consistent with his innocence has not been excluded." Id. Thus, "the question is not whether 'some evidence' supports the hypothesis, but whether a rational factfinder could have found the incriminating evidence renders the hypothesis of innocence unreasonable." James, 53 Va. App. at 682, 674 S.E.2d at 577 (citing indirectly Hudson, 265 Va. at 513, 578 S.E.2d at 785). In practical terms, this means that — even if not

"*inherently* incredible" — a defendant's exculpatory version of events need not be accepted by the factfinder. Montgomery v. Commonwealth, 221 Va. 188, 190, 269 S.E.2d 352, 353 (1980) (emphasis in original).

### B. CODE § 18.2-108 — RECEIPT OF STOLEN PROPERTY

A conviction under Code § 18.2-108 requires proof that the property was "previously stolen by some person other than the accused; that the accused received the property from such other person; that at the time he received the property he knew it had been stolen; and that he received it with dishonest intent." Whitehead v. Commonwealth, 278 Va. 105, 112, 677 S.E.2d 265, 269 (2009), modified on different grounds, No. 080775 (Va. Oct. 22, 2009) (quoting Reaves v. Commonwealth, 192 Va. 443, 449, 65 S.E.2d 559, 563 (1951) (brackets omitted)).

### *Property Previously Stolen From The Owners*

Palmer contends no evidence established that the watch found in his bedroom had been stolen from either of the two victims. We disagree.

"Possession of items similar to those stolen may give rise to the inference of theft or of guilty receiving, depending on other evidence in the case," John L. Costello, Virginia Criminal Law and Procedure, § 10.7, at 183 (4th ed. 2008), and "[i]t is not necessary that the identity of stolen property should be invariably established by positive evidence," Henderson v. Commonwealth, 215 Va. 811, 813, 213 S.E.2d 782, 783 (1975). See also Bunch v. Commonwealth, 225 Va. 423, 437, 304 S.E.2d 271, 279 (1983); Wright v. Commonwealth, 2 Va. App. 743, 747, 348 S.E.2d 9, 12 (1986).

Smith testified that the stolen property from the apartment included Cheney's watch. The watch recovered by the detective in Palmer's bedroom shortly after the theft was returned to the "victim" — which, in the context of Smith's testimony, could only reasonably have meant Cheney. During cross-examination, Palmer answered with an unqualified "yes" when asked if it

was "just a coincidence that the games were stolen from the same person as the watch that you had in your house." Considered together, such circumstances provided ample grounds for the jury to conclude that the watch found in Palmer's possession was Cheney's stolen watch. Palmer asserted at trial no reasonable hypothesis suggesting the watch found in his bedroom belonged to anyone other than the victim who claimed it from the police.

*Dishonest Intent & Knowledge That The Property Was Stolen*

Palmer also argues the jury irrationally concluded he possessed the requisite dishonest intent and knowledge that the watch and the video games had been stolen. We again disagree.

"It is true, of course, that an essential element of the offense of receiving stolen property is guilty knowledge. It is also true that no witness testified directly that the defendant knew the property in question was stolen. But the element of guilty knowledge may be supplied by circumstantial evidence, *including the circumstance that the accused was in possession of recently stolen property*." Covil v. Commonwealth, 268 Va. 692, 695, 604 S.E.2d 79, 81 (2004) (quoting Roberts v. Commonwealth, 230 Va. 264, 270, 337 S.E.2d 255, 259 (1985)) (emphasis added by Covil).

Where, as here, the jury rejects as unreasonable the defendant's hypothesis of innocence, "evidence of possession of recently stolen goods *is sufficient* to support a conviction for the crime of larceny . . . or the crime of larceny by receiving stolen goods." Westcott v. Commonwealth, 216 Va. 123, 127, 216 S.E.2d 60, 64 (1975) (emphasis added and citation omitted); see also Reaves v. Commonwealth, 192 Va. 443, 451, 65 S.E.2d 559, 564 (1951); Stapleton v. Commonwealth, 140 Va. 475, 488-89, 124 S.E. 237, 241 (1924). Accord Ronald J. Bacigal, Criminal Offenses & Defenses in Virginia 435 (2008-09 ed.) ("Virginia juries have always been instructed that unexplained, exclusive possession of recently stolen goods permits an inference that the accused knew the goods were stolen and had dishonest intent.").

In addition, the "requirement that a defendant's possession be 'exclusive' does not mean that it must be separate from all others. Possession may be exclusive even though it is the joint possession of two or more persons acting in concert." 3 Charles E. Torcia, Wharton's Criminal Law § 349, at 380-81 (15th ed. 1995). As a jury instruction in this case correctly explained: "'Exclusive personal possession' may be joint with another or others but it must be under circumstances which cause you to believe that the defendant has knowing joint possession." See generally Best v. Commonwealth, 222 Va. 387, 389, 282 S.E.2d 16, 17 (1981) ("One can be in exclusive possession of an item when he jointly possesses it with another." (citing Carter v. Commonwealth, 209 Va. 317, 323, 163 S.E.2d 589, 594 (1968))).

These principles confirm the rationality of the jury's verdict in this case. Palmer's possession of the stolen watch a few days after the theft, coupled with his joint possession of fifty stolen video games just a day earlier, provides sufficient circumstantial proof that he knew these items were stolen and received them with dishonest intent. Both the watch and the video games were stolen at the same approximate time from the same apartment. Within a few days, Palmer was found in possession of *both* items of stolen property at *different* locations.

The prosecutor's question and Palmer's answer summarized the point well: "And it's just a coincidence that the games were stolen from the same person as the watch that you had in your house?" "Yes," Palmer replied. As Professor Wigmore explained: "It is the mere fact of the repeated possession of other stolen goods that lessens the chances of innocence." 2 John H. Wigmore, Evidence in Trials at Common Law § 325, at 287 (James H. Chadbourn rev. 1979).[3] To be sure, "the greater the variety of the goods and sources they came from, the more striking the coincidence, and the more difficult to believe the [defendant's] explanation is an innocent

---

[3] See also State v. Hull, 132 P.2d 436, 437-38 (Ariz. 1942) ("Evidence of possession of other stolen property is also admissible on the question of knowledge."); State v. Zeman, 226 P. 465, 466-67 (Utah 1924) (noting Wigmore's "conclusions are supported by numerous cases").

one." Id.  This commonsense observation parallels the accepted premise that larceny can be inferred even when the defendant possesses some, but not all, of the stolen goods.  See Henderson, 215 Va. at 813, 213 S.E.2d at 784; Williams v. Commonwealth, 188 Va. 583, 595, 50 S.E.2d 407, 413 (1948); Johnson v. Commonwealth, 141 Va. 452, 456, 126 S.E. 5, 6-7 (1925).

Finally, the jury was entitled to discount Palmer's claim of unwittingly buying the watch for $10 from a friend and his allegation that Robertson alone possessed the stolen games.  The jury could consider such self-serving statements "as little more than lying to 'conceal his guilt,'" Coleman v. Commonwealth, 52 Va. App. 19, 25, 660 S.E.2d 687, 690 (2008) (citations omitted), and could treat such prevarications as "affirmative evidence of guilt," Wright v. West, 505 U.S. 277, 296 (1992).  In this way, "[a] false or evasive account is a circumstance . . . that a fact-finder may properly consider as evidence of guilty knowledge." Covil, 268 Va. at 696, 604 S.E.2d at 82 (citations omitted).  This venerable principle follows from the broader observation that "whenever a witness testifies, his or her credibility becomes an issue." Hughes v. Commonwealth, 39 Va. App. 448, 462, 573 S.E.2d 324, 330 (2002) (citation omitted).

C.  VALUE OF THE STOLEN VIDEO GAMES

Palmer also asserts the jury had insufficient evidence to value the stolen video games in excess of $200.  Palmer, however, failed to preserve this issue for appellate review.

Under Virginia law, a defendant waives a sufficiency challenge to a jury verdict by failing to either make a timely motion to strike, McQuinn v. Commonwealth, 20 Va. App. 753, 757, 460 S.E.2d 624, 626 (1995) (*en banc*), or a motion to set aside the finding of guilt, Cotter v. Commonwealth, 21 Va. App. 453, 454, 464 S.E.2d 566, 567 (1995) (*en banc*).  Even when timely made, however, a *general* sufficiency objection does not preserve for appeal a challenge to a *specific* aspect of the offense.  Marshall v. Commonwealth, 26 Va. App. 627, 636-37, 496

S.E.2d 120, 125 (1998); see also Floyd v. Commonwealth, 219 Va. 575, 584, 249 S.E.2d 171, 176 (1978). Instead, under Rule 5A:18, the "same argument must have been raised, with specificity, at trial before it can be considered on appeal." Correll v. Commonwealth, 42 Va. App. 311, 324, 591 S.E.2d 712, 719 (2004); see also Riner v. Commonwealth, 268 Va. 296, 325, 601 S.E.2d 555, 571 (2004). To be sure, "[m]aking one specific argument on an issue does not preserve a *separate* legal point on the *same* issue for review." Edwards v. Commonwealth, 41 Va. App. 752, 760, 589 S.E.2d 444, 448 (2003) (*en banc*), aff'd by unpublished order, No. 040019 (Va. Oct. 15, 2004) (emphasis added).

Here, Palmer's motion to strike the receipt-of-stolen-property charge — which he summarily renewed after he put on evidence in his case in chief — challenged only whether the evidence proved he knowingly "received the [stolen] property with dishonest intent."[4] Palmer never questioned the value of the fifty stolen video games. Nor did Palmer seek to discredit Smith's testimony that the purchase price of each game was between $39 and $49.[5] Because Palmer failed to preserve the issue of value for appellate review, he cannot raise it for the first time on appeal.[6]

---

[4] At oral argument on appeal, Palmer suggested he raised this point while moving to strike a different larceny charge, the indictment alleging that he obtained money from Game Stop by false pretenses. The issue there, however, was not the value of the video games stolen from Smith but the $120 fraudulently obtained from Game Stop. As the trial court correctly noted, it was irrelevant to that charge whether the games could have been sold for more or less than $200. The only issue was the amount of money fraudulently obtained from Game Stop. An "appellate court, in fairness to the trial judge, should not . . . put a different twist on a question that is at odds with the question presented to the trial court." Commonwealth v. Shifflett, 257 Va. 34, 44, 510 S.E.2d 232, 237 (1999).

[5] For this reason, we offer no opinion on the Commonwealth's argument that the evidence of value suffices because, notwithstanding the trade-in value of the video games, the proper measure is their "retail value" which can be inferred from "the original purchase price" of the video games. Robinson v. Commonwealth, 258 Va. 3, 5-6, 516 S.E.2d 475, 476 (1999).

[6] Exceptions to Rule 5A:18 exist — but we employ them only in rare cases, and we never invoke them *sua sponte*. See Widdifield v. Commonwealth, 43 Va. App. 559, 564, 600 S.E.2d 159, 162 (2004) (*en banc*); Edwards, 41 Va. App. at 761, 589 S.E.2d at 448. Because Palmer

## III.

We affirm Palmer's conviction, finding the evidence sufficient to prove he knowingly received stolen property and that he waived the issue of value by not moving to strike the evidence on this ground.

Affirmed.

---

does not assert that good cause or the ends of justice warrant relief from the procedural bar, we do not address this issue.