# 𝔚𝔶𝔱𝔥𝔢𝔟𝔦𝔩𝔩𝔢

DORA HAMILTON v. COMMONWEALTH OF VIRGINIA.

June 9, 1941.

Record No. 2412.

Present, All the Justices.

*Paul A. Holstein,* for the plaintiff in error.

*Abram P. Staples, Attorney-General,* and *Edwin H. Gibson, Assistant Attorney-General,* for the Commonwealth.

CAMPBELL, C. J., delivered the opinion of the court.

This writ of error brings under review a judgment of the Circuit Court of Amherst county, sentencing the accused to confinement in the penitentiary for a term of five years, in accordance with the verdict of a jury finding her guilty of murder in the second degree.

The verdict reads as follows: "We, the jury, find the defendant guilty of murder in the second degree, as a principal in the second degree, as charged in the indictment, and fix her punishment in the *penitentiary* for five years."

The indictment upon which accused was tried and convicted was in accordance with the statutory form pursuant to section 4865 of the Code, and charged that "Dora Hamilton and Artie Hamilton on the 13th day of June, 1940, in the said county of Amherst, feloniously did kill and murder Richard Staton against the peace and dignity of the Commonwealth."

Upon her arraignment, accused elected to be tried separately; thereupon, the Commonwealth elected to proceed with the trial of Artie Hamilton.

There was a trial by a jury and Artie Hamilton was found guilty of voluntary manslaughter and his punishment fixed at confinement in the penitentiary for a term

of four years. From this judgment of the court, carrying into effect the verdict of the jury, a writ of error was not sought.

It is assigned as error that the trial court erred in refusing to set aside the verdict of the jury and in sentencing the accused in accordance therewith. It is a *concessum* in the case that Artie Hamilton fired the shot that killed Staton.

In the petition for a writ of error this is said: "The sole issue is whether Dora Hamilton shared the criminal intent of Artie Hamilton or in some manner committed an overt act in the commission of the offense."

The status of an aider and abettor has been defined by this court so frequently that it is unnecessary to advert to all of the numerous decisions involving a discussion of the subject.

The most recent case on the question is *Stone* v. *Commonwealth,* 176 Va. 570, 11 S. E. (2d) 728. There we read:

"The question on which rests a decision of the case is whether the evidence adduced by the Commonwealth shows beyond a reasonable doubt that the accused aided and abetted in the commission of the crime charged in the indictment, or shared in the criminal intent of the principal, if an offense was committed.

"This court, in numerous decisions, has defined the status of an aider and abettor. In *Triplett* v. *Commonwealth,* 141 Va. 577, 586, 127 S. E. 486, 489, the accepted rule is stated thus: 'To constitute one an aider and abettor, he must be guilty of some overt act, or he must share the criminal intent of the principal or the party who commits the crime.'

"In *Creasy* v. *Commonwealth,* 166 Va. 721, 725, 186 S. E. 63, 64, Mr. Justice Chinn said: 'The rule as to what constitutes an aider and abetter is well settled in Virginia. * * *

" ' "In *Rasnake's Case* (*Rasnake* v. *Commonwealth*), 135 Va. 677, 710, 115 S. E. 543, Sims, P., cites

with approval *Kemp's Case* (*Kemp* v. *Commonwealth*), 80 Va. 443, and *Wooden's Case* (*Wooden* v. *Commonwealth*), 117 Va. 930, 86 S. E. 305, Ann. Cas. 1917D, 1032, where it is held that the settled rule is that mere presence and consent alone are not sufficient to constitute one an aider and abettor in the commission of a crime.''

'' 'In *Harold* v. *Commonwealth*, 147 Va. 617, 136 S. E. 658, 660, Judge Burks said: ''The mere presence of a party when a crime is committed and his consent thereto is no crime, if he was not aiding, abetting, counselling or advising its commission, and was not present for that purpose.'' '

''In *Whited* v. *Commonwealth*, 174 Va. 528, 6 S. E. (2d) 647, it is held that 'one who aids and abets in the commission of a crime must share in the criminal intent of the actual perpetrator of the criminal act.' ''

It being conceded that Artie Hamilton, the eleven year old son of the accused, fired the shot which killed Staton, the burden is upon the Commonwealth to prove by competent evidence, beyond a reasonable doubt, that accused was not only present when the killing occurred, but that she was present aiding and abetting Artie Hamilton in the commission of the crime, by the performance of some overt act, and that she shared in the criminal intent of Artie Hamilton to take the life of Staton. By this legal tape her guilt is to be measured.

The following facts, as shown by the brief of the Attorney General, constitute the case of the Commonwealth:

''Dora Hamilton and Richard Staton, the deceased, had been on bad terms for a number of years. She had threatened to kill him some nineteen months prior to the homicide. Allie Rogers, who does not fix the time at which the ill feeling originated between the deceased and Mrs. Hamilton, testified that he had worked for Staton for about twenty-five years; that he knew they did not get along, and that they did not have any dealings with one another.

"On the day of the homicide, June 13, 1940, Rogers was working with deceased, fixing a fence between the Staton and Hamilton lands. After having worked on the fence for three hours, Rogers, before recommencing to peel bark, decided to go for a drink of water. As he left Staton, he 'heard a little racket below the wire fence.' When he looked, he saw Dora Hamilton and her son, Artie, standing there, and the boy had a gun 'swinging straight down in his hand.' Very soon thereafter, Mrs. Hamilton began charging Staton with having been down on her land and, when deceased denied this, Rogers heard her say, 'Yes, you have, you damn son of a bitch. Here is your tracks.' Staton tried to reason with Dora, telling her that he and Allie Rogers had been around the wire fence fixing it, and that neither he (the deceased) nor she knew where the boundary line was. Rogers then testified that just about the time deceased said that, Staton 'hollered and said, "Oh, Allie," and when he said "Oh, Allie," the gun fired right to the second.' Immediately after the shot was fired, the boy, Artie, who was eleven years of age at the time, and his mother, Dora, ran from the scene of the homicide. She subsequently denied any knowledge of the shooting.

\* \* \* \* \*

"Allie Rogers, the chief witness for the Commonwealth, said that he did not hear Mrs. Hamilton make any threats on the day of the homicide, nor did he hear her tell Artie to shoot Staton."

The evidence adduced by the accused may be thus summarized: Accused is an illiterate woman approximately forty years of age, who lives in the mountainous region of Amherst county. She is the wife of Mascot Hamilton and the mother of four children, the oldest of whom is Artie Hamilton, eleven years of age. On the morning of the killing of Staton, Artie Hamilton (who, it is shown, has never attended school and is illiterate), went with his father and one John Garrett to work in the woods some distance from the home. After working for some

time, Artie left his father to return to the home for a can of water. When he arrived at the home his mother had left the house and was in the act of starting forth in the mountains to search for a horse which had "strayed off." At the request of his mother, Artie proceeded to join her in the search for the missing horse. Before leaving the house he produced a shotgun, which he stated he was in the habit of carrying when he went into the woods, in order to shoot snakes with which the mountains were infested. Artie Hamilton further testified that he did not know Staton was repairing a line fence approximately a half mile distant from his home; that along the way his mother stopped to pick some ginseng roots; that the first knowledge he had of the presence of Staton was when Staton ordered the accused off of his land; that accused denied she was on Staton's land; that Staton called accused a * * * lying old bitch and threw two rocks at her; that Staton then said, "You damned old slut, I am coming over this fence and kill you;" that he was scared and believing Staton was about to attack his mother, he fired the gun without taking aim; that accused did not at any time tell him to shoot Staton; that after the gun fired he and accused ran back to the house; that he did not know Staton had been hit; that he denied the shooting because he was scared.

Accused, testifying as a witness in her own behalf, stated in substance that she was unaware of Staton's presence at the scene of the killing; that she had never threatened to kill Staton; that she was not trespassing upon his land when he called her a vile name and threw two rocks at her; that he called her a slut and "grabbed the fence and started over;" that she was excited and was watching Staton and did not see Artie raise the gun; that she did not realize what Artie was doing until the gun fired; that she did not tell him to shoot Staton; that she did not do anything to cause her son to shoot Staton; that she ran from the scene of the shooting; that she denied knowledge of the killing because she was scared.

 All conflicts in the evidence have, by the verdict of the jury, been resolved in favor of the Commonwealth. As we comprehend the evidence, the only conflict therein is the conflict in regard to the statement of accused at the scene of the homicide and the conflict in regard to the alleged threat made nineteen months prior to the killing.

 The contention of the Commonwealth that accused and her eleven year old son entered into a conspiracy to murder Staton is, in our opinion, untenable. Except for the alleged threat, testified to by Herbert Hamilton, the son-in-law of accused, who, the record shows, was not on good terms with accused, there is no evidence to sustain the theory of a conspiracy.

The evidence of accused and Artie Hamilton, which is not contradicted, that they went to the mountains to look for a horse which had strayed from the premises; that the boy carried a shotgun to shoot snakes as he had done on frequent occasions; that the accused picked "seng" along the way; and that the meeting with Staton was accidental, is not incredible. That being true, the following doctrine, stated by Mr. Justice Epes in *Spratley* v. *Commonwealth,* 154 Va. 854, 152 S. E. 362, applies:

 "While the jury is a judge of both the weight of the testimony and the credibility of the witnesses, it may not arbitrarily or without any justification therefor give no weight to material evidence, which is uncontradicted and is not inconsistent with any other evidence in the case, or refuse to credit the uncontradicted testimony of a witness, even though he be the accused, whose credibility has not been impeached, and whose testimony is not either in and of itself, or when viewed in the light of all the other evidence in the case, unreasonable or improbable, and is not inconsistent with any fact or circumstance to which there is testimony or of which there is evidence. There must be something to justify the jury in not crediting and in disregarding the testimony of the accused other than the mere fact that he is the accused, or one of them."

There being no evidence of a conspiracy, the question is: Was the accused present, aiding, abetting and counseling the slaying of Staton by Artie Hamilton?

The fact that she was present when the killing occurred is not sufficient to warrant a conviction. For that, she must have been guilty of some overt act in furtherance of the criminal conduct of Artie Hamilton; she must have shared in the criminal intent of the slayer of Staton.

Except for an inference based upon the supposition that she wished the alleged threat, made nineteen months before, carried into execution, there is in the evidence no basis for the conclusion that accused instigated the killing. Accused testified that she did not aid, abet or counsel the slaying of Staton. In this she is corroborated by Rogers, a witness for the Commonwealth, who testified in part as follows:

"Q. Did you stop and listen to every word that was said?

"A. I think I heard every word, yes, sir.

"Q. Did you hear Mrs. Hamilton say anything to Artie, the boy?

"A. No, sir, I never heard the boy say a word and didn't hear her say a word to the boy.

"Q. You didn't hear her tell Artie to shoot him, did you?

"A. No, sir, I didn't hear anything like that.

"Q. All you heard was them arguing about which one was on the other's side of the fence?

"A. Yes, sir.

"Q. And did you hear her say to him, 'I am going to shoot you, you so and so?' Did you hear her make any threats against him?

"No, sir.

"Q. She made no threats?

"A. No, sir."

The evidence and conduct of Rogers further disclosed that he did not anticipate any serious trouble between the accused and Staton.

If the theory of the Commonwealth be correct, Artie Hamilton and the accused could have been convicted of murder in the first degree. The jury did not accept this theory in either case. The jury trying the accused did, however, adopt the theory, as shown by the verdict, that there was a possibility that accused was guilty.

A verdict based upon possibility or suspicion will not be permitted to stand.

"It is a canon of criminal law that it is not sufficient to create a suspicion or possibility of guilt, but the evidence must go further and exclude every reasonable hypothesis except that the accused is guilty of the offense charged in the indictment." *Stone's Case,* 176 Va. 570, 11 S. E. (2d) 728.

In our opinion the Commonwealth has failed to prove beyond a reasonable doubt that the accused aided and abetted Artie Hamilton in the slaying of Staton, and therefore, the judgment is reversed and the case is remanded for a new trial.

*Reversed.*