## Richmond

HOWARD STUART SIMMONS V. COMMONWEALTH OF VIRGINIA.

April 22, 1968.

Record No. 6720.

Present, All the Justices.

*J. L. Tompkins* for plaintiff in error.

*A. R. Woodroof, Assistant Attorney General (Robert Y. Button, Attorney General,* on brief), for defendant in error.

CARRICO, J., delivered the opinion of the court.

Howard Stuart Simmons, the defendant, was indicted along with Early J. Burnett and Gerald R. Martin for the unlawful and felonious burning of a bridge belonging to the Norfolk & Western Railway Company. (Code, § 18.1-81.) The defendant elected to be tried separately. Upon his trial before a jury, he was convicted, and his punishment was fixed at three years in the penitentiary. He was awarded a writ of error to the final judgment confirming the conviction and imposing the sentence.

The sole question to be decided is whether the evidence was sufficient to sustain the defendant's conviction.

The evidence shows that the fire in question occurred at approximately 6:30 p.m. on November 7, 1966, at Bridge 1521 of the Norfolk & Western Railway Company. The bridge was located at a

point where the railway company's line overpassed State Route 639 near Ivanhoe in Wythe County. The bridge, supported by large creosoted wooden piers, was extensively damaged by the fire.

The railway's line runs north and south in the area of the bridge. Ivanhoe Station is located on the west side of the railroad, north of the bridge. Highway 94 parallels the line on its west side. The village of Ivanhoe is located farther to the west, approximately ½ mile from the line.

State Route 639 leads from the village of Ivanhoe in an easterly direction, intersects Highway 94, continues under the bridge, then curves to the south and roughly parallels the railroad for about ¾ mile to a point where the road curves to the west, underpasses the railroad at a trestle, and again intersects Highway 94.

Near the foot of Bridge 1521 and adjacent to Route 639, there was located a dump used by residents of the area for dumping and burning trash. "A lot of trash" was "burnt in the vicinity of this bridge." A space 75 to 100 feet wide had been cleared between the foot of the bridge and the dump after an earlier fire at the bridge.

On the date in question, Burnett, Martin, and the defendant traveled in the latter's automobile from their homes in Grayson County to go hunting near Ivanhoe. After they finished hunting, the trio purchased two bottles of wine at "the wine joint" in Ivanhoe and drove to the dump at the railroad bridge "to take a drink." At the dump, they alighted from the vehicle. Martin "shot two rats with a shotgun," and they "all took a drink."

Several persons visited the dump and saw the defendant and his companions there. Clyde Hyatt was the only one of those visiting the dump to give any testimony of importance. He arrived in his truck at approximately 6:15 p.m. with a barrel of trash and saw a car sitting about 100 feet from the bridge, occupied by three men. He turned his truck around; its lights "blinded" the occupants of the car, and "they turned their heads." He recognized the defendant and Burnett, with whom he was acquainted, as two of the occupants of the car.

As soon as Hyatt pulled into the dump, the defendant started his vehicle and turned on his lights. The car left the dump, traveling under the bridge in a westerly direction toward Ivanhoe.

While he was there, Hyatt observed smoke rising from the dump about 150 feet from the bridge. He also observed some cardboard boxes stacked in two piles between a set of the wooden piers supporting the bridge, but saw no fire around the bridge.

Hyatt was at the dump "not over a minute" before he left. He drove to a service station in Ivanhoe, and within five to ten minutes heard the fire alarm. He went to the firehouse and inquired as to the location of the fire. He was told it was at the railroad bridge, and he went there and found the bridge burning "all the way across." The "heaviest part of the burning" was located where Hyatt had observed the piles of cardboard boxes stacked between the piers.

The defendant and his companions were next observed between 6:30 and 7:00 p.m. by Howard Alley, who lived on Route 639, ¾ mile southeast of Bridge 1521. Alley, accompanied by his family, was backing his automobile out of his driveway when he saw a vehicle approaching from the direction of the bridge. He permitted the vehicle to pass, and it "went on up the road pretty fast." Alley proceeded up the road in the direction taken by the other vehicle. At about that time, his daughter said, "There is a big fire down there"; and Alley looked and saw that the railroad bridge was on fire.

After traveling a short distance, Alley observed the other vehicle parked on a side road. As he passed, the occupants turned their heads; and one of them "kind of pulled his coat up over his face." Alley turned around and went back and secured the license number of the vehicle. He then went to his own driveway and turned around. When he again reached the side road, the vehicle was gone.

Alley informed the police of the license number he had secured, and it turned out to be the number assigned to the defendant's vehicle.

The defendant reached his home, located 10 to 12 miles from the scene of the fire, between 7:15 and 7:30 p.m. He "ate something," watched television for awhile, and went to bed.

At approximately 11 p.m., a deputy fire marshal arrived at the home of the defendant and asked to see him. The marshal found the defendant in bed and tried to talk to him, but "he was not coherent" and "had a strong odor of alcohol about his breath."

The next morning, the deputy fire marshal talked to the defendant. The latter denied that he had been at the dump the evening before, and stated that he had not been nearer the burned bridge than "a bootlegger's joint," located 1½ to 2 miles south of the bridge.

The defendant was arrested on December 7, 1966, one month after the fire occurred. On the day following his arrest and after he had been released on bail, he went to the home of Clyde Hyatt and asked him what he knew about the fire. When Hyatt said he "didn't know nothing," the defendant told him that after he left the dump on the

night of the fire, he had driven westerly from the scene to the railroad station and then southerly on Highway 94 to his home.

Several weeks later, the defendant and Burnett called upon Hyatt. They asked him if he had "seen them light the fire," and he said "no." They then asked if they could summon him to court, and he replied in the affirmative. A week or so before trial, the defendant and Burnett again visited Hyatt and inquired if he "would still let them summons" him, and he again agreed. Hyatt was summoned as a witness for the defendant, but at the trial, he was called as a witness for the Commonwealth.

The defendant testified in his own behalf, and denied that he or his companions had set the bridge on fire. He admitted, however, that he had been at the dump on the night the fire occurred. He stated that after leaving the dump, he had traveled easterly on Route 639 past Alley's home and thence on Highway 94 to his own home.

The defendant sought to explain the discrepancy between his admission from the witness stand that he had been at the dump on the night of the fire, and his earlier denial of that fact to the deputy fire marshal, by saying, "I am under oath today." When asked about the inconsistency between his testimony that he had driven easterly on Route 639 from the dump, and his earlier statement to Clyde Hyatt that he had traveled westerly, he denied that he had ever made such a statement to Hyatt.

The Commonwealth relies most heavily upon the contradictions between the statements made by the defendant to the deputy fire marshal and to Clyde Hyatt before trial, and the testimony of the defendant and that of Hyatt and Howard Alley at the trial, to support its contention that the evidence was sufficient to sustain the verdict.

It is true that the defendant told the deputy fire marshal that he had not been at the dump on the night of the fire, while on the witness stand he admitted that he had been there. It is also true that the defendant told Clyde Hyatt that after leaving the dump, he had driven westerly under the bridge to the railroad station and thence southerly on Highway 94 to his home, while at the trial he said that he had not gone to the station but had traveled easterly from the dump on Route 639 past Alley's home, before reaching Highway 94.

It is likewise true that Hyatt saw the defendant leave the dump and drive under the bridge in a westerly direction toward Ivanhoe, while a few minutes later Alley observed the defendant's vehicle proceeding "pretty fast" in an easterly direction on Route 639, at about the time Alley saw that the bridge was on fire. And when Hyatt's

testimony is coupled with that of Alley, the inference may be drawn that after leaving the dump and proceeding in a westerly direction, the defendant turned around, came back under the bridge, and proceeded in an easterly direction past Alley's home. This would, of course, place the defendant and his companions at the bridge a short time before the fire was discovered and give them an opportunity to set the fire.

The inference just indicated and the contradictory statements of the defendant, considered along with the action of one of the occu-' pants of the defendant's vehicle in pulling "his coat up over his face," as observed by Alley, were sufficient, the Commonwealth says, to sustain the jury's verdict.

We do not agree. Where a building or structure is burned, the presumption is that the fire was caused by accident, rather than by the act of the accused accompanied by a deliberate intent. *Jones* v. *Commonwealth*, 103 Va. 1012, 1021, 49 S. E. 663, 666 (1905).

To establish the offense against the defendant, the Commonwealth had the burden of proving that the fire which burned the railway company's bridge was of incendiary origin and that the defendant was the guilty agent in the burning. *Poulos* v. *Commonwealth*, 174 Va. 495, 499, 6 S. E. 2d 666, 667 (1940); *Stine* v. *Commonwealth*, 162 Va. 856, 867, 174 S. E. 758, 763 (1934).

Aside from the presence of the cardboard boxes stacked between the piers of the bridge, the record before us leaves much to be desired by way of proof that the fire was caused by incendiary means, rather than by accident. But even if it be assumed that the fire was of incendiary origin, there is still lacking that essential degree of proof that the defendant, either acting alone or in concert with one or both of his companions, was the arsonist.

The evidence in no way established that the defendant or his companions had anything to do with the piling of the cardboard boxes between the piers of the bridge, if that be where the fire was started. The evidence did not show that the defendant or his companions had any cause to bear ill will toward the railway company, if the fact be that the fire was started by someone out of a spirit of vengeance. And the evidence failed to show that the defendant or either of his companions had ever threatened to do harm to the owner of the burned property, as is sometimes true in arson cases.

It must be admitted that the evidence shows that the defendant had the opportunity to start the fire and that his actions and his contradictory statements after the fire were sufficient to arouse suspicion

and render appropriate an investigation of his possible connection with the fire. But between the fact of opportunity and the actuality of the fire, there exists a serious void in the proof, filled only with the suspicion that the defendant may have been the guilty agent; and suspicion is never enough to sustain a conviction.

The judgment of conviction will, accordingly, be reversed, and the case remanded for a new trial, if the Commonwealth be so advised.

*Reversed and remanded.*