## Richmond

KENNETH WAYNE SPEIGHT

v.

COMMONWEALTH OF VIRGINIA

No. 0104-85

Decided March 17, 1987

COUNSEL

Michael HuYong, for appellant.

Eugene Murphy, Assistant Attorney General (Gerald L. Baliles, Attorney General, on brief), for appellee.

OPINION

## OPINION ON REHEARING EN BANC*

**KEENAN, J.** — Kenneth Wayne Speight was convicted in a bench trial of grand larceny and distribution of heroin. He was sentenced to a term of ten years imprisonment with five years suspended for the grand larceny conviction, and to a term of twelve years with five years suspended on the distribution of heroin conviction. The issues presented in this appeal are: (1) whether the evidence was sufficient to support the grand larceny conviction; and (2) whether the evidence was sufficient to prove that the substance analyzed as heroin was purchased from Speight.[1] Upon review of the record, and the argument and authorities presented, we affirm both convictions.

---

* Panel opinion at 2 Va. App. 140 (1986).

[1] On April 1, 1986, a panel of this court reversed the grand larceny conviction and affirmed the conviction for distribution of heroin. 2 Va. App. 140, 342 S.E.2d 408 (1986). A dissenting opinion was filed with regard to the panel's reversal of the grand larceny conviction. Pursuant to Code § 17-116.02(D), this court convened en banc to consider the issues presented here.

## I.

On October 12, 1983, a stereo component system, a .44 magnum handgun, and other items were stolen from a residence on West Grace Street in the City of Richmond. Sergeant William W. Spaulding of the Henrico County Police Department testified that he had "a chance to see the defendant" on several occasions while Spaulding was working undercover on a "sting" operation in Richmond. On one of those occasions, October 13, 1983, Spaulding met Speight and drove him to a location on West Grace Street. At first, Spaulding remained in the car which was parked in front of 1847 Grace Street. Speight went into an apartment building located at 1844 West Grace Street, came out, and told Spaulding to follow him inside. They met George Saunders on the second floor and followed him through a front apartment. A female and another male were also present in the apartment at the time.

Detective Spaulding testified that Saunders directed him to a kitchen table which held various pieces of stereo equipment - a turntable, amplifier, receiver, tuner, cassette deck and synthesizer. In the presence of Speight, Spaulding reached an agreement with Saunders to purchase the six items for $450. Spaulding also agreed at that time to purchase a .44 magnum handgun from Saunders on the following day for $140. Spaulding, Saunders, Speight, an unidentified male, and Spaulding's partner, Investigator Trimble, carried the stereo equipment to Spaulding's car.[2]

Spaulding paid Saunders $443 for the stereo equipment and promised to pay the remaining seven dollars when he purchased the gun on the following day. According to Spaulding, "Speight asked George [Saunders] how much money he was going to give him and George [Saunders] replied $25.00." Saunders handed two bills of unknown denomination to Speight. Spaulding then drove Speight to a White Tower Restaurant and arranged to meet Speight there the next day.

Spaulding and Speight met the next day as arranged. Shortly thereafter, Saunders arrived at the same location and discharged a passenger, who rode in Spaulding's automobile with Spaulding

---

[2] The record does not disclose or account for the presence of Investigator Trimble except when he helped transport the stereo equipment.

and Speight to 1844 West Grace Street. Before Saunders entered the building, Spaulding paid him the seven dollars that was owed on their prior transaction. Spaulding remained in the automobile with Speight and "paid Kenny [Speight] $20.00 for the introduction on the 13th to set up the deal to buy the stereo equipment."

Saunders returned to Spaulding's vehicle carrying a Sanyo mini-stereo component set and a .44 magnum handgun wrapped in a white shirt. Although Spaulding "didn't know he was going to bring that stereo set with him at the time," Spaulding purchased the Sanyo set, which he identified as "the radio," for $75, and paid Saunders $125 for the gun. Spaulding then drove Speight to Cary Street and "paid Kenny [Speight] ten more for helping us on the deal with the gun and the radio."

Speight testified in his own defense. He stated that Spaulding, who was driving his own car, paid him the money "for riding me over to 1844 West Grace Street." Speight denied that he had received any money from Saunders. He also testified that Spaulding and Saunders discussed the first transaction in the hall outside of his presence.

Indicted for grand larceny under Code § 18.2-95, Speight was tried and found guilty by the court. The court found him not guilty of a charge of common law burglary.

Speight contends that the evidence was insufficient to convict him of grand larceny because the evidence did not establish that he was in exclusive possession of the stolen property. *See Best v. Commonwealth*, 222 Va. 387, 282 S.E.2d 16 (1981); *Drinkard v. Commonwealth*, 163 Va. 1074, 178 S.E. 25 (1935). The Commonwealth, however, does not rely on the presumption of larceny which arises from an accused's recent, exclusive possession of stolen property. Instead, noting that larceny is considered a continuing offense, the Commonwealth's position is that "anyone who knows that personal property is stolen and assists in its transportation or disposition is guilty of larceny." *Moehring v. Commonwealth*, 223 Va. 564, 568, 290 S.E.2d 891, 892 (1982).[3]

---

[3] In response to Speight's motion for a bill of particulars, the Commonwealth stated: (2) On October 13, 1983, the defendant and others sold stolen property to the undercover Henrico Police officers. This property was stolen from Ralph Bryant, 1635 West Grace Street on October 12-13, 1983. The property was composed of stereo equipment purchased by the Undercover officers for $443.00.

On appeal, we review the evidence in accordance with the standard set forth in *Higginbotham v. Commonwealth*, 216 Va. 349, 218 S.E.2d 534 (1975):

> Where the sufficiency of the evidence is challenged after conviction, it is our duty to consider it in the light most favorable to the Commonwealth and give it all reasonable inferences fairly deducible therefrom. We should affirm the judgment unless it appears from the evidence that the judgment is plainly wrong or without evidence to support it.

*Id.* at 352, 218 S.E.2d at 537.

The trial court received testimony from Detective Spaulding describing Speight as the individual who organized the transaction and assisted in its culmination. Spaulding testified that he paid Speight $20 "for the introduction on the 13th to set up the deal to buy the stereo equipment." Spaulding further testified that at the time of the transaction in George Saunders' apartment, Speight asked Saunders how much money he was going to give him. Following this question, Spaulding observed Saunders hand Speight two bills of unknown denomination. Spaulding also testified that Speight was present when he and Saunders agreed on the terms of the sale.

In contrast to this testimony, Speight gave a wholly different account of his role in the transaction. He said that Spaulding, who was driving his own car over to Saunders' apartment, paid him the money "for riding me over to 1844 West Grace Street." In essence, Speight asserted that he was paid merely for keeping Spaulding company on the ride over to Saunders' apartment. In further contrast to Spaulding's testimony, Speight denied that he had received any money from Saunders. Speight also stated that after Saunders showed them the equipment, Spaulding and Saunders went into the hall and later returned to the room where Speight was waiting. Speight stated that Spaulding then told him that he and Saunders had "consummated the deal."

(3) On October 14, 1983, the defendant sold a .44 Magnum handgun to the Undercover officers for $125.00 taken from the same victim as beforementioned in paragraph number two. Also sold at this meeting was a Sanyo mini-stereo also belonging to Ralph Bryant; the officers paid $75.00 for this item.

■ Presented with material conflicts in the evidence, we find that the trial court was entitled to believe Spaulding and disbelieve Speight. Further, because it was sitting as the trier of fact in this case, the trial court's assessment of the credibility of the witnesses is entitled to the same weight as a jury's verdict. This principle was explained by the Supreme Court in *Lane v. Lane*, 184 Va. 603, 35 S.E.2d 744 (1945):

> [T]he finding of the judge, upon the credibility of the witnesses and the weight to be given their evidence, stands on the same footing as the verdict of a jury, and unless that finding is plainly wrong, or without evidence to support it, it cannot be disturbed.

*Id.* at 611, 35 S.E.2d at 752.

■ Based upon our review of the record, we find that the trial court was entitled to conclude that Speight gave inherently incredible testimony concerning why Spaulding had given him money. Based on Spaulding's testimony, the court was entitled to find that Speight lied when he denied that he had organized and actively participated in the transaction. Further, the court was entitled to find that Speight lied when he denied that Saunders paid him for helping in the sale of the property. In receiving this testimony, the trial court was able to observe the witnesses' demeanor and evaluate their credibility. If the court found that Speight's testimony was incredible, it was entitled to infer that he lied to conceal his guilt. *See Carter v. Commonwealth*, 223 Va. 528, 532, 290 S.E.2d 865, 867 (1982).

An additional circumstance presented for the court's consideration was the fact that Speight did not take Spaulding directly up to Saunders' apartment, but went up alone first. When Speight went up to Saunders' apartment, Spaulding remained in the car which was parked in front of 1847 West Grace Street. We believe that the trial court was entitled to find this circumstance unusual in light of Speight's denial that he had any role in the transaction. His act of going up alone first to Saunders' apartment was inconsistent with this denial, and was circumstantial evidence bearing on the issue of whether he knew the property was stolen.

A further circumstance bearing on the issue of Speight's guilty knowledge was the fact that he returned with Detective Spaulding

to meet Saunders the next day. On this occasion, Spaulding purchased the .44 magnum handgun and the mini-stereo set. Spaulding testified that he paid Speight an additional $10 for "helping on the deal with the gun and the radio." From this circumstance, we believe that the trial court was entitled to question why, if Speight had been a passive non-participant in the October 13, 1983, transaction as he alleged, he had again accompanied Spaulding the next day. Therefore, we find that the trial court was entitled to consider this circumstance as further evidence that Speight was untruthful about his role in the October 13, 1983 sale, and that he did in fact organize the transaction on that date.

■ In summary, the trial court received both direct and circumstantial evidence that Speight organized the disposition of the stolen property, as well as evidence that he was untruthful in his account of his participation. The trial court was entitled to infer guilty knowledge on the part of Speight upon finding his testimony untruthful about material facts and upon consideration of his conduct prior to and during the sale of the stolen property. *See Carter*, 223 Va. at 532, 290 S.E.2d at 867. Finding that he knew the property was stolen, there was sufficient evidence for the trial court to convict Speight of grand larceny. As stated in *Moehring*, 223 Va. at 568, 290 S.E.2d at 892, "anyone who knows that personal property is stolen and assists in its transportation or disposition is guilty of larceny." Therefore, upon review of the evidence in its totality, we find that the trial court was entitled to conclude that Speight knew that the property was stolen, actively participated in its disposition, and lied about his actual role in the transaction in order to mask this fact. Accordingly, we affirm the conviction for grand larceny.

## II.

The evidence also shows that Spaulding purchased a white powder substance in a package from Speight at approximately 3:15 p.m. on November 20, 1983, in a hallway on West Main Street. Spaulding gave the package to Detective Atkinson and police officer Shaw. Atkinson and Shaw sealed the package in an evidence envelope, wrote information on the envelope, and delivered it to Paul Strother, a forensic chemist at the Consolidated Laboratory Services. The following information is written on the evidence envelope:

Defendant: *#1 Exhibit #1*

Charge: *DISTRIBUTION OF SCH.I SUBSTANCE: HEROIN*

Officer Making Purchase or Recovery: *WWS*

Place: *W. MAIN STREET & VINE STREET*

Date: *11/20/83*

Time: *1522 Hrs.*

Description of Contents: *ONE (1) CLEAR SEALED PIECE OF PLASTIC CONTAINING A WHITE POWDER SUBSTANCE*

Signature of Persons Sealing Envelope Or Package:

*J.W. ATKINSON #0103 S.B. SHAW #0099*

Strother testified that he received the evidence envelope containing a white powder material from Atkinson and Shaw. Upon analysis, the substance was found to be heroin. The certificate of analysis filed in this case reflects this result.

Speight's contention that the evidence does not link the heroin to him because the certificate does not bear his name is without merit. The testimony is clear that the substance purchased from Speight was the substance placed in the evidence envelope and analyzed by the forensic chemist; moreover, the testimony established the chain of custody.

In summary, therefore, we find that the evidence was sufficient to support the conviction of grand larceny and that the evidence was sufficient to prove that the substance analyzed as heroin was purchased from Speight. Accordingly, both convictions appealed from are affirmed.

*Affirmed.*

Koontz, C.J., Baker, J., Cole, J., Coleman, J., Duff, J., Hodges, J., and Moon, J., concurred.

Benton, J., with whom Barrow, J. joins, concurring in part and dissenting in part.

I concur in Part II of the majority's opinion which concludes that the evidence was sufficient to uphold the conviction for distribution of heroin. I respectfully dissent, however, from Part I of the opinion which upholds the grand larceny conviction. The evidence in this record, when viewed in the light most favorable to the Commonwealth, does not support the majority's conclusion that the Commonwealth proved beyond a reasonable doubt that Kenneth Speight knew the property was stolen. The inference of guilty knowledge which the majority culls from a cumulation of circumstances that it deems suspicious is untenable. "[S]uspicion is never enough to sustain a conviction." *Simmons v. Commonwealth*, 208 Va. 778, 783, 160 S.E.2d 569, 573 (1968).

> It is well settled in Virginia that to justify conviction of a crime, it is not sufficient to create a suspicion or probability of guilt, but the evidence must establish the guilt of an accused beyond a reasonable doubt. It must exclude every reasonable hypothesis except that of guilt. The guilt of a party is not to be inferred because the facts are consistent with his guilt, but they must be inconsistent with his innocence.

*Cameron v. Commonwealth*, 211 Va. 108, 110-11, 175 S.E.2d 275, 276 (1970).

The deficiency in the Commonwealth's proof results from the inconclusiveness of Officer Spaulding's testimony. Spaulding said only that he "met" Speight on October 13 and drove him to the West Grace Street apartment. He offered no explanation for the meeting with Speight or their reason for going to that particular address. The Commonwealth's evidence did not negate the reasonable hypothesis advanced by Speight that Spaulding asked Speight to accompany him in order to provide an introduction to Saunders, not because Speight knew the property was stolen but because Speight knew Saunders. Spaulding's testimony that the day after his purchase of the stolen items from Saunders he "paid Kenny [Speight] $20.00 *for the introduction* on the 13th to set up the deal to buy the stereo equipment" comports precisely with

Speight's testimony that Spaulding met Saunders through Speight's introduction. The majority's conclusion that this portion of Spaulding's testimony proves that Speight "organized the transaction" is not supported in the record. Spaulding testified that he paid Speight "for the introduction." The statement provides no basis to infer that Speight knew he was organizing a sale of stolen property.

The Commonwealth introduced no direct evidence that Speight told Spaulding that Saunders had property to sell. Furthermore, the Commonwealth introduced no evidence regarding the circumstances of Spaulding's approach to Speight or Speight's approach to Spaulding that culminated in the purchase of the stolen property. All of these facts were within Spaulding's knowledge. The absence of proof provides only the opportunity for speculation. This record, however, provides evidence of facts which support a reasonable hypothesis explaining how Speight and Spaulding learned that Saunders had the property.

Speight's unrebutted testimony was that he was drinking beer with Spaulding, whom he knew as Wolf, in the parking lot of the White Tower Restaurant on October 13, when Saunders approached Spaulding and him with an offer to sell stereo equipment. Speight testified that he was acquainted with Saunders but declined the offer because he had no money. According to Speight, "George Saunders told him at the White Tower parking lot he wanted to sell [Spaulding] some equipment and [Spaulding] told him that he wanted to see the equipment first." Saunders told them to drive over to 1844 West Grace Street, and Saunders left on foot. Although the Commonwealth could have easily rebutted Speight's version of the initial meeting with Saunders, if it was untrue, it did not do so.

It is well established in Virginia that Speight's testimony may not be disregarded simply because he is accused of a crime.

> While the . . .[trier of fact] is the judge of both the weight of the testimony and the credibility of witnesses, it may not arbitrarily or without any justification therefor give no weight to material evidence, which is uncontradicted and is not inconsistent with any other evidence in the case, or refuse to credit the uncontradicted testimony of a witness, even though he be the accused, whose credibility has not been im-

peached, and whose testimony is not either in and of itself, or when viewed in the light of all the other evidence in the case, unreasonable or improbable, and is not inconsistent with any fact or circumstance to which there is testimony or of which there is evidence. There must be something to justify the . . .[trier of fact] in not crediting and in disregarding the testimony of the accused other than the mere fact that he is the accused, or one of them.

*Spratley v. Commonwealth*, 154 Va. 854, 864, 152 S.E. 362, 365 (1930); *see also Holland v. Commonwealth*, 190 Va. 32, 41, 55 S.E.2d 437, 441 (1949); *Hamilton v. Commonwealth*, 177 Va. 896, 903, 15 S.E.2d 94, 97 (1941). There were no material conflicts in the evidence in this case, and the record does not support the majority's conclusion that Speight "gave inherently incredible testimony." With a few minor exceptions, the material facts as recited by Spaulding and Speight can be reconciled.

Where facts are established which are susceptible of two interpretations, one of which is consistent with the innocence of the accused, the jury or the judge trying the case cannot arbitrarily adopt the interpretation which incriminates him. The interpretation more favorable to the accused should be adopted unless it is untenable under all the facts and circumstances of the case.

*Williams v. Commonwealth*, 193 Va. 764, 772, 71 S.E.2d 73, 77 (1952) (citations omitted); *see also Smith v. Commonwealth*, 185 Va. 800, 821, 40 S.E.2d 273, 282 (1946).

Spaulding's subjective belief that he was paying Speight for facilitating the purchase of stolen property is not inconsistent with Speight's subjective belief that he was paid for directing Spaulding to the apartment, and provides no basis for concluding that Speight gave inherently incredible testimony. That Speight may have expected or accepted payment for directing Spaulding to the apartment or may have seized the opportunity to enrich himself at Spaulding's expense is neither inherently incredible nor inconsistent with other evidence.

Although the trier of fact could have disbelieved Speight's testimony that he received no money from Saunders, the possibility that Speight lied about not receiving money from one of the par-

ticipants while admitting receiving money from the other does not constitute evidence sufficient to support a finding of guilt beyond a reasonable doubt. *See Hyde v. Commonwealth,* 217 Va. 950, 954-55, 234 S.E.2d 74, 77-78 (1977); *see also Bishop v. Commonwealth,* 227 Va. 164, 169-70, 313 S.E.2d 390, 393 (1984); *Stover v. Commonwealth,* 222 Va. 618, 624, 283 S.E.2d 194, 196-97 (1981). Even if we accept as true Spaulding's testimony that Saunders paid two bills of unknown denomination to Speight after offering him $25, that fact, standing alone or with other circumstances proved, is insufficient to show guilty knowledge beyond a reasonable doubt. The payment is also consistent with payment for leading Spaulding to the apartment from the White Tower or assisting with carrying the equipment to the car.

The majority finds "unusual" the fact "that Speight did not take Spaulding directly up to Saunder's apartment, but went up alone first," and concludes from that circumstance that Speight must have had a "role in the transaction." Apparently, the majority considers these "unusual" circumstances to be suspicious. To draw an inference of guilty knowledge simply because Speight entered the building prior to Spaulding is unwarranted. It is undisputed that Speight knew Saunders. Furthermore, the testimony reveals that Spaulding was the driver of the vehicle and that Speight was his passenger. We are left to speculate whether Spaulding was parking the automobile or whether there were other circumstances not disclosed by the Commonwealth's evidence that explained the circumstances of the entry. Spaulding may have asked Speight to determine whether Saunders, who left the White Tower on foot, had arrived, or Spaulding may have availed himself of the opportunity to confer with his partner, whose presence is disclosed by the record only when he helped remove the stereo from the apartment after the sale. Spaulding's testimony does not support a conclusion that the occurrence was either "unusual" or suspicious. In any event, if a conviction cannot be sustained where the circumstances proved are merely suspicious, *see e.g., Cameron v. Commonwealth,* 211 Va. at 110-11, 175 S.E.2d at 276, it cannot be sustained where the circumstances proved are "unusual." The suggestion that Speight's entrance into the building without Spaulding established guilty knowledge is without foundation because "[t]he facts are, at least, equally as susceptible of an interpretation which is consistent with the innocence of the defendant as with his guilt." *Holland v. Common-*

*wealth*, 190 Va. at 41, 55 S.E.2d at 441.

Furthermore, whether Speight was or was not present in the room when Spaulding negotiated directly with Saunders for the purchase of the items is irrelevant. There is no evidence in this record that the discussion which occurred during the negotiations related to the nature or origin of the stereo. Thus, any conflict between Spaulding and Speight concerning Speight's presence during the sale negotiations is immaterial.

Likewise, Speight's return with Spaulding to meet Saunders the next day provides no basis from which to infer that Speight knew the property was stolen. Spaulding testified that *he* arranged to meet Speight on that day. Furthermore, it was Spaulding, not Speight, who arranged to meet with Saunders to complete the sale transaction. At most, the evidence proves that Speight was invited by Spaulding to accompany him when he again met with Saunders.

There is no evidence that Speight possessed or was aware of the existence of the handgun or the Sanyo radio which Spaulding purchased from Saunders on the second day. Spaulding negotiated directly with Saunders for the purchase of the handgun which was not in the apartment and which was delivered to him by Saunders the following day. When Saunders delivered the handgun to Spaulding, he also brought along the Sanyo radio which Spaulding did not expect. No evidence links Speight to either the handgun or the Sanyo radio.

The evidence in this record does not provide any basis for concluding that Speight knew that the property was stolen and participated in or facilitated its distribution. Viewing the evidence in the light most favorable to the Commonwealth, the most that the trier of fact could have reasonably concluded was that Speight led Spaulding to a private residence where either Spaulding or Speight knew that a stereo component set was being offered for sale by Saunders. The sale of a used stereo component set at a private residence, however, is not a circumstance which is illegal or inherently suspicious. Speight neither purchased nor sold the items. There is no evidence which would support an inference or conclusion that Speight knew that any of the items were stolen or even knew that Saunders had the handgun or the Sanyo radio. For these reasons, I would reverse the grand larceny conviction because the evidence does not prove beyond a reasonable doubt that Speight possessed the guilty knowledge required to support a conviction.