COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Fitzpatrick, Judges Elder and Agee
Argued at Salem, Virginia


AMANDA LOVING BARR

MEMORANDUM OPINION[*] BY
v.    Record No. 1150-01-3        CHIEF JUDGE JOHANNA L. FITZPATRICK
                                            APRIL 9, 2002
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF LYNCHBURG
A. Dow Owens, Judge

Wayne D. Inge for appellant.

Amy L. Marshall, Assistant Attorney General
(Jerry W. Kilgore, Attorney General, on
brief), for appellee.


Amanda Loving Barr (appellant) appeals her conviction in a

bench trial of two counts of forgery in violation of

Code § 18.2-172.[1]  Appellant contends the trial court erred in

(1) denying her motion to strike five of the Commonwealth's

exhibits because they were not properly authenticated as a

business record, (2) failing to grant her motion to strike

because there was a misnomer in the indictment which the

_____

     * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

     [1] Appellant was indicted for six counts of forgery, five
counts of felony false pretenses, and one count of attempted
felony false pretenses.  She was found not guilty of the other
charges.

Commonwealth failed to amend, (3) excluding as hearsay a part of her husband's testimony, and (4) holding that the evidence was sufficient to support her forgery convictions. Finding no error, we affirm.

## I. BACKGROUND

Under familiar principles of appellate review, we examine the evidence in the light most favorable to the Commonwealth, the prevailing party below, granting to it all reasonable inferences fairly deducible therefrom. See Juares v. Commonwealth, 26 Va. App. 154, 156, 493 S.E.2d 677, 678 (1997).

So viewed, the evidence established that appellant's husband, Tim Barr, worked for Manpower International, Inc. (Manpower), a temporary staffing agency, from January 2, 1997 to June 4, 1999 as an on site contract worker at Ericsson. Appellant had also worked for Manpower and had been placed at Ericsson in a clerical position. Manpower had office space within Ericsson's building in order to supervise Manpower's employees who did temporary work at Ericsson. On June 7, 1999, Tim Barr began full time employment with Ericsson at the same plant. At this time he was no longer entitled to payments from his job with Manpower.

At trial, Ann Ward (Ward), the area manager and records keeper for Manpower, testified that Manpower employees received payment based on time sheets that are filled out by the employee

and signed by their immediate supervisor. Ward stated that the time sheets were available at any of Manpower's offices and employees could pick up more than one at a time. Time sheets could be held for up to three or four weeks and could be turned in by anyone.

Manpower received six separate time sheets with Tim Barr's name on them with claims for work he had done at the Ericsson plant from June 7, 1999 to July 25, 1999. Each time sheet was signed with the purported signature of a Manpower supervisor. During this time, Tim Barr was not an employee of Manpower, but was directly employed by Ericsson and thus not entitled to additional compensation from Manpower. Manpower paid all but the last time sheet by direct deposit into the Barrs' joint checking account. One of the direct deposit statements was mailed to Tim Barr at Manpower rather than his home address.

Manpower discovered that Tim Barr had been paid for work done while he was not their employee. Investigator P.K. Morris (Morris) interviewed appellant and her husband. While talking with Morris, appellant stated that "she did not fill out any of the Manpower time slip forms and had no idea who did it." Appellant also claimed that she and Tim Barr had no financial difficulties and that she did not know why the unauthorized deposits were made to their joint checking account.

On August 4, 1999, Morris executed a search warrant at the Barr home and found a computer generated printout of a Wachovia bank statement with a July 22, 1999 deposit of $610.48 from Manpower highlighted.  The time slips, handwriting and fingerprint samples from Tim Barr and appellant were sent to the state laboratory for analysis.

Catherine Johnson (Johnson), a forensic scientist, analyzed the submitted samples for fingerprints.  She found two of appellant's fingerprints on Commonwealth's exhibit five, a time sheet for the week ending June 13, 1999, and two of appellant's fingerprints on Commonwealth's exhibit nine, a time sheet for the week ending July 18, 1999.  No fingerprints on any of the other time sheets could be traced to either appellant or Tim Barr.  However, Johnson testified that the absence of fingerprints did not mean that a person had not handled the item.

Richard Horton (Horton), a forensic document examiner, compared each of the five time sheets to known handwriting samples for appellant and Tim Barr.  He concluded that appellant, to the exclusion of all others, wrote the printed customer and employee information.  He opined that there were "indications" that appellant wrote the work hours and forged the signature of Adelle Locatelli, the signing supervisor.  Horton defined "indications" as a "very good similarity between the

- 4 -

personal handwriting characterstics, between the questioned and the known writing, and I think there's only – that it's very unlikely that someone other than a person who's writing it and comparing it to is the author." Because the signature of Tim Barr did not appear to be a free and natural writing, Horton stated that it "could be an imitation" and "doesn't lend itself to comparison." Horton noted that while different inks were used for different documents, each individual form contained only one type of ink, which suggested that the same person and same instrument prepared all parts of the form.

Adelle Locatelli, the authorized signatory, stated that she had not signed any of the forms. She further testified that appellant told her she was having financial difficulties. During the time period of the forgeries, appellant's bank accounts showed negative balances, overdraft fees and insufficient funds fees.

Tim Barr testified that he had not filled out any of the time sheets. The trial court sustained a hearsay objection when appellant's counsel asked him "Now, as far as the time tickets themselves, okay, did your wife, Amanda, write any of those?"

The trial court found appellant guilty of two counts of forgery and on May 1, 2001, denied a motion to set aside the verdict.

## II. TIME SHEET ADMISSIBILITY

"The admissibility of evidence is within the broad discretion of the trial court, and a ruling will not be disturbed on appeal in the absence of an abuse of discretion." Blain v. Commonwealth, 7 Va. App. 10, 16, 371 S.E.2d 838, 842 (1988). "[A] trial court 'by definition abuses its discretion when it makes an error of law.'" Shooltz v. Shooltz, 27 Va. App. 264, 271, 498 S.E.2d 437, 441 (1998) (quoting Koon v. United States, 518 U.S. 81, 100 (1996)).

Rule 5A:18 provides that "[n]o ruling of the trial court . . . will be considered as a basis for reversal unless the objection was stated together with the grounds therefor at the time of the ruling, except for good cause shown or to enable the Court of Appeals to attain the ends of justice."

> "The main purpose of requiring timely specific objections is to afford the trial court an opportunity to rule intelligently on the issues presented, thus avoiding unnecessary appeals and reversals. In addition, a specific, contemporaneous objection gives the opposing party the opportunity to meet the objection at that stage of the proceeding."

Ohree v. Commonwealth, 26 Va. App. 299, 307, 494 S.E.2d 484, 488 (1998) (emphasis added) (quoting Weidman v. Babcock, 241 Va. 40, 44, 400 S.E.2d 164, 167 (1991)).

During the direct examination of Ward, the Commonwealth offered into evidence the time sheets as its exhibits five

- 6 -

through ten.  Appellant did not object and in fact agreed to their admissibility.  After both parties concluded their examination of Ward, appellant then moved to strike the time sheet evidence because Ward was not the custodian of the records.  The trial court denied the motion as untimely.

"'To be timely, an objection to the admissibility of evidence must be made when the occasion arises--that is, when the evidence is offered, the statement made or the ruling given.'"  Zook v. Commonwealth, 31 Va. App. 560, 568, 525 S.E.2d 32, 35-36 (2000) (quoting Harward v. Commonwealth, 5 Va. App. 468, 473, 364 S.E.2d 511, 513 (1988)).  "[T]he contemporaneous objection rule does not preclude the trial court, in the exercise of its sound discretion, from entertaining a late objection and excluding inadmissible evidence after it has been introduced."  Id. at 568, 525 S.E.2d at 36 (emphasis added).

Thus, the issue in the instant case is whether, as a matter of law, the trial court abused its discretion in finding appellant's motion untimely.  Appellant contends that her failure to make a contemporaneous objection to the admission of the time sheets should not bar consideration of this issue because this was a bench trial.  We disagree.

First we note that at trial appellant treated the admissibility of the information contained in the time sheets as

- 7 -

"hearsay" and controlled by the business records exception.[2]

This was the basis for her late objection to exhibits five

through ten.

> It is clear that Ms. Ward is not the
> custodian of those records.  You know,
> although they may be business records kept
> in the normal course of business, those
> originals weren't in her custody.  And, they
> can't be introduced without an objection.  I
> frankly just didn't know where the
> examination was going to go.

Assuming without deciding that the admissibility of these

records was controlled by the business records requirements,

this case falls within the rationale of Sparks v. Sparks, 24 Va.

App. 279, 482 S.E.2d 69 (1997).  The records were admissible

because Ward "had access to all of [Manpower's] records, [they]

were the original records entered in the regular course of

[Manpower's] business, and that [s]he obtained them from the

---

[2] We note on appeal the Commonwealth argues that the
information contained in the records, i.e. that Tim Barr had
worked certain hours and was therefore owed money, was not
offered for the truth of the information contained therein but
was offered to show that the time sheets were a false writing
and thus was not hearsay.  While we agree with this contention,
it was not presented to the trial court and as a result does not
meet the requirements for a "right result for the wrong reason"
analysis.  "[A]n appellate court may affirm the judgment of a
trial court when it has reached the right result for the wrong
reason, so long as the correct reason and its factual basis were
presented at trial."  McLellan v. Commonwealth, 37 Va. App. 144,
155, 554 S.E.2d 699, 704 (2001) (quoting Driscoll v.
Commonwealth, 14 Va. App. 449, 452, 417 S.E.2d 312, 313-14
(1992)).  It may not be used if the correct reason for affirming
the trial court was not raised in any manner at trial.  Eason v.
Eason, 204 Va. 347, 352, 131 S.E.2d 280, 283 (1963).

place where they were properly kept in custody." Id. at 283, 482 S.E.2d at 71.

Ward, Manpower's custodian of the records, testified (1) regarding the chain of custody of these "original" records, (2) that the company relied on these records in paying $585.34 and $610.48 to appellant, and (3) that the company suffered a loss as a result of the forged documents. Ward's detailed knowledge of how the company's records were maintained and her access to the originals establish the trustworthiness and reliability of the records. Thus, the trial court did not "make an error of law" in allowing the time sheets to be admitted. See Shooltz, 27 Va. App. at 271, 498 S.E.2d at 441. Therefore we find no error in the trial court's ruling.

Under the facts of this case, the trial judge did not abuse his discretion in ruling that appellant's objection was untimely and the time sheets were admissible.

### III.  MISNOMER

Appellant next contends that a misnomer in the indictment which the Commonwealth failed to amend requires dismissal of the two remaining forgery charges.

"Misnomer of a victim [in an indictment] is not fatal when the victim's identity is made clear at trial." Bassett v. Commonwealth, 222 Va. 844, 855, 284 S.E.2d 844, 851 (1981). "The purpose of an indictment is to give the accused notice of

the nature and character of the offense charged." Cantwell v. Commonwealth, 2 Va. App. 606, 608, 347 S.E.2d 523, 524 (1986).

The indictments charged appellant with forging documents to the prejudice of the rights of Manpower Temporary Services. Ward, a manager with the parent company, Manpower, Inc., testified that "Manpower International, Inc." was the Virginia arm of the company that provided temporary workers and that the documents were Manpower's time sheets. The victim's identity was made clear through Ward's testimony, and appellant was clearly on notice that the victim was her husband's former employer. Thus, the trial court did not err in denying appellant's motion to dismiss the indictments.

### IV.  SUFFICIENCY OF THE EVIDENCE

Appellant next argues that the Commonwealth's evidence does not exclude the possibility that she handled the two time sheets for an innocent purpose before the time sheets entered the Manpower payment system.

In reviewing sufficiency of the evidence, "the judgment of the trial court sitting without a jury is entitled to the same weight as a jury verdict." Saunders v. Commonwealth, 242 Va. 107, 113, 406 S.E.2d 39, 42, cert. denied, 502 U.S. 944 (1991).

"[T]he trial court's judgment will not be set aside unless plainly wrong or without evidence to support it." Hunley v. Commonwealth, 30 Va. App. 556, 559, 518 S.E.2d 347, 349 (1999).

"Circumstantial evidence 'is as competent and is entitled to as much weight as direct evidence, provided it is sufficiently convincing to exclude every reasonable hypothesis except that of guilt.'" Taylor v. Commonwealth, 33 Va. App. 735, 737, 536 S.E.2d 922, 923 (2000) (quoting Coleman v. Commonwealth, 226 Va. 31, 53, 307 S.E.2d 864, 876 (1983), cert. denied, 465 U.S. 1109 (1984)). "The Commonwealth need only exclude reasonable hypotheses of innocence that flow from the evidence, not those that spring from the imagination of the defendant." Hamilton v. Commonwealth, 16 Va. App. 751, 755, 433 S.E.2d 27, 29 (1993).

The credibility of a witness and the inferences to be drawn from proven facts are matters solely for the fact finder's determination. See Long v. Commonwealth, 8 Va. App. 194, 199, 379 S.E.2d 473, 476 (1989). In its role of judging witness credibility, the fact finder is entitled to disbelieve the self-serving statements of the accused and to conclude that the accused is lying to conceal his guilt. See Speight v. Commonwealth, 4 Va. App. 83, 88, 354 S.E.2d 95, 98 (1987) (en banc).

In pertinent part, Code § 18.2-172 provides that "[i]f any person forge any writing, . . . to the prejudice of another's right, or utter, or attempt to employ as true, such forged

- 11 -

writing, knowing it to be forged, he shall be guilty of a Class 5 felony."

"Forgery is a common law crime in Virginia . . . [and] is defined as the false making or materially altering with intent to defraud, of any writing which, if genuine, might apparently be of legal efficacy, or the foundation of legal liability." Dillard v. Commonwealth, 32 Va. App. 515, 517, 529 S.E.2d 325, 326 (2000) (citing Fitzgerald v. Commonwealth, 227 Va. 171, 173, 313 S.E.2d 394, 395 (1984)).

The evidence, when properly viewed, established that appellant was the author of the two fraudulent time sheets. Catherine Johnson, a fingerprint expert, testified that appellant's latent fingerprints were on Commonwealth's exhibits five and nine. Richard Horton, a handwriting expert, testified that appellant wrote out the printed customer and employee information. He stated that there were "indications" that appellant wrote the work hours and forged the signature of the signing supervisor. Only one type of ink was used on the time sheets, indicating to the expert that the time sheets were filled out at the same time. Appellant denied she ever filled out the time sheets and denied she was having financial problems. However, her bank statements showed negative balances and overdraft fees. The trial court could consider her untruthful statements and conclude that she was lying to conceal

- 12 -

her guilt.  See Speight, 4 Va. App. at 88, 354 S.E.2d at 98.
The evidence as a whole is sufficient to prove beyond a
reasonable doubt that appellant forged the time sheets.

### V.  HEARSAY

Lastly, appellant contends that the trial court erred in
failing to allow her husband to answer the question "[D]id your
wife, Amanda, write any of those [time sheets]?"  Appellant
argues that the trial court erred in sustaining the
Commonwealth's hearsay objection.  The trial court allowed
appellant to proffer her husband's excluded testimony while
hearing the motion to set aside the verdict.  The judge denied
the motion, stating "I think there was sufficient evidence, more
than sufficient evidence for the Court's finding, and I confirm
its finding of guilt."

Appellant's proffer included that:

> Mr. Barr would have testified that he did,
> in fact, recognize his wife's handwriting on
> the exhibits, that that was her handwriting
> in the employee section and in the employer
> section and that he knows that by virtue of
> the fact that he's been married to her, not
> what she has told him.  He would further
> testify that the rest of the writings on
> each of the exhibits were not hers, and that
> he knows that once again by virtue of being
> her husband and having lived with her and
> seen her handwriting for a period of time.
> He would also testify that he did not make
> any of the writing on any of the documents.
>
> Now, he would further testify that there was
> a period of time in which his wife was also

a temporary employee at Ericsson and . . . when they were visiting, his wife would handle [the time sheets] and would write in the generic portions of those exhibits.

Assuming the exclusion of this testimony to be error, it is harmless.

"[A] non-constitutional error is harmless '[w]hen it plainly appears from the record and the evidence given at trial that the parties have had a fair trial on the merits and substantial justice has been reached.'" Lavinder v. Commonwealth, 12 Va. App. 1003, 1005-06, 407 S.E.2d 910, 911 (1991) (en banc) (quoting Code § 8.01-678) (emphasis removed). This determination requires that we ascertain "whether, as a matter of law, [the] decision by the fact finder was affected by the error." Id. "[I]f not, the error is harmless." Id. "An error does not affect a verdict if a reviewing court can conclude . . . that, had the error not occurred, the verdict would have been the same." Id. at 1005, 407 S.E.2d at 911; see Galbraith v. Commonwealth, 18 Va. App. 734, 743-44, 446 S.E.2d 633, 639 (1994).

Factors appropriate to consider in making a harmless error analysis include "the importance of the witness' testimony in the prosecution's case . . . and . . . the overall strength of the prosecution's case." Maynard v. Commonwealth, 11 Va. App. 437, 448, 399 S.E.2d 635, 641-42 (1990) (en banc) (quoting

- 14 -

<u>Delaware v. Van Arsdall</u>, 475 U.S. 673, 684 (1986)).  If it "plainly appears" that the Commonwealth's case was no "less persuasive," exclusive of the disputed evidence, any related error did not affect the outcome of the trial.  <u>Galbraith</u>, 18 Va. App. at 744, 446 S.E.2d at 639.

The trial court, after hearing the proffer, found that there was "more than sufficient evidence" to convict appellant. Husband's disclaimer that his wife did not write the time sheets was outweighed by the expert testimony of the fingerprint and handwriting expert witnesses.  The overall strength of the Commonwealth's case was not undermined by this testimony and under such circumstances, any error with respect to appellant's husband's testimony was clearly insignificant to the result. Thus, despite the exclusion of husband's testimony, the record provides overwhelming evidence of appellant's guilt.  For the foregoing reasons, we affirm.

<u>Affirmed.</u>